**Rasaq Opyemi SANUSI, Petitioner,**

**v.**

**Alberto GONZALES, United States**

Attorney General * Respondent.

No. 01–4047–AG.

United States Court of Appeals,
Second Circuit.

Argued: April 3, 2006.

Decided: April 18, 2006.

---

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto Gonzales is substituted for his predecessor, Attorney General John Ashcroft, as the respondent in this case.

Sandra Greene, York, PA, for Petitioner.

Aixa Maldonado-Quiñones, Assistant United States Attorney (Thomas P. Colantuono, United States Attorney, Peter E. Papps, Assistant United States Attorney, on the brief), United States Attorney's Office for the District of New Hampshire, Concord, NH, for Respondent.

Before: CABRANES, SOTOMAYOR, and RAGGI, Circuit Judges.

PER CURIAM.

We consider here whether a Court of Appeals possesses jurisdiction to review the decision of an immigration judge to deny a motion for a continuance filed during an immigration proceeding.

Petitioner Rasaq Opyemi Sanusi, a native and citizen of Nigeria, seeks review of a February 26, 2001 order of the Board of Immigration Appeals ("BIA") dismissing his appeal of a decision by Immigration Judge ("IJ") Donn Livingston denying Sanusi's request for relief under the United Nations Convention Against Torture ("CAT").[1] *See In re Sanusi,* Order and Oral Decision of the Immigration Judge, File No. A76 186 829 (Jamaica, NY, Mar. 16, 2000). Sanusi argues that the IJ made two errors, each of which was affirmed by the BIA. First, Sanusi argues that the IJ should have granted him relief under the CAT, stating that the IJ applied the wrong legal standard and incorrectly found Sanusi's testimony not to be credible. Second, Sanusi contends that the IJ erred in denying Sanusi's motion for a continuance, which he requested so that he might acquire additional medical evidence in support of his CAT claim. In addition, Sanusi argues that the BIA erred when it refused to remand Sanusi's case to the IJ for further proceedings to consider newly available evidence.

We conclude that Sanusi's arguments are without merit and, accordingly, we deny the petition for review.

**BACKGROUND**

Sanusi originally applied for asylum and for withholding of removal under sections 208(a) and 241(b)(3) of the Immigration and Naturalization Act of 1952 ("INA"), as amended, 8 U.S.C. §§ 1158(a), 1231(b)(3). The IJ denied Sanusi's application for asylum and for withholding of removal under the INA on March 23, 1998 and ordered Sanusi removed. Sanusi declined to appeal, thereby waiving any claims of error

---

1. United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100–20 (1988), 1465 U.N.T.S. 85; *see also* 8 C.F.R. § 1208.16 (regulations implementing the CAT).

he might have had before this Court. *See* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right[.]"); *Foster v. INS,* 376 F.3d 75, 77 (2d Cir. 2004) ("[F]ailure to exhaust [these remedies] constitutes a clear jurisdictional bar." (internal quotation marks omitted)). Regulations enacted after the CAT entered into force allowed aliens subjected to removal orders on or before March 22, 1999 to apply for relief under the CAT by moving to reopen their cases.[2] Sanusi did so, and the IJ reopened the case on August 23, 1999. The IJ conducted a hearing on Sanusi's CAT claim on December 29, 1999 and on March 16, 2000 issued an order denying relief for, *inter alia,* "the same reasons that [Sanusi's] asylum application was denied." Sanusi now seeks review of the BIA order dismissing his appeal of the IJ's order denying him CAT relief; his original application for asylum and for withholding of removal under the INA is not at issue here.

In Sanusi's application for asylum, his "credible fear interview," and his "Torture Convention interview," Sanusi alleged that he was persecuted and tortured in Nigeria on account of his political beliefs and activities. Among other instances of mistreatment, Sanusi alleged that he was arrested, interrogated, and detained on several occasions because of his activism on behalf of Nigeria's Social Democratic Party ("SDP"). He stated further that while in detention he was beaten, his ribs were broken, his head was kicked and "ripped open," and his arm was broken. In addition, according to Sanusi, during a subsequent detention, a "pin was stuck into [his] male part" and he was struck until unconscious. He claims to have been warned repeatedly to stop his work on behalf of the party and against Nigeria's president, whom the SDP opposed. Sanusi stated that he fled Nigeria after seeing his name on a list of persons whom "the government want[ed] to get rid of."

After leaving Nigeria in December 1993, Sanusi arrived in the United Kingdom, where he attempted, apparently unsuccessfully, to obtain asylum. He stated that he left the United Kingdom for the United States, where he arrived in October 1997, because he feared the United Kingdom would deport him to Nigeria and that Nigeria's government would torture or kill him were he to return.

On March 23, 1998, the IJ denied Sanusi's original application for asylum and for withholding of removal under the INA on the basis of an adverse credibility determination. Among other things, the IJ based his adverse credibility finding on the following items in the record: (1) Sanusi said at one point in his "credible fear interview" that he had been a member of the "Christian Democratic Party," which was inconsistent with his claim at other times to have been in the "Social Democratic Party,"[3] (2) Sanusi's demeanor at his hearing before the IJ "was somewhat hesitant and in [the IJ's] opinion . . . was not consistent with credible testimony," and (3) Sanusi was "vague and inconsistent regarding his employment with the Nigerian Airways."[4]

---

2. The regulation is codified at 8 C.F.R. § 1208.16. The initial "interim rule" implementing the CAT entered into force on March 22, 1999. *See* Regulations Concerning the Convention Against Torture, 64 Fed.Reg. 8478, 8488 (Feb. 19, 1999).

3. Like the asylum officer who conducted the credible fear interview, the IJ found the "Christian Democratic Party" claim especially implausible because "there is no Christian Democratic Party in Nigeria."

4. The details of Sanusi's employment with the state-owned airline were significant, accord-

In addition, the IJ found that Sanusi presented false documents upon entry to the Unites States, indicating "a willingness to employ deception in order to gain admission to the United States," and noted that Sanusi failed to present documents supporting his claimed political activity in Nigeria.

After Sanusi's case was reopened on August 23, 1999 for review of his CAT claim, the same IJ heard the case. In a decision dated March 16, 2000, the IJ concluded that Sanusi's CAT claim was "based on the same basic facts as the original asylum and withholding of removal applications." The IJ recounted the grounds on which the previous adverse credibility finding rested and identified additional reasons, based on the reopened proceeding, for finding Sanusi's story not credible. First, Sanusi mentioned his "wife" during the reopened proceeding, but on his asylum application he had stated that he was unmarried.[5] Second, Sanusi again failed to produce documents supporting his claims.[6]

The IJ denied Sanusi's CAT claim on the merits and also denied his request for a continuance. As the IJ explained, Sanusi's "counsel requested additional time to provide medical evidence supportive of [Sanusi's] claim to having been mistreated by authorities in Nigeria." The IJ recounted that Sanusi had already been granted continuances—one from the close of the hearing on December 29, 1999 until January 31, 2000 and another from then until February 10, 2000. Sanusi's counsel sought a third continuance on February 10, 2000 and subsequently "represented by telephone that further evidence was coming." In a letter dated February 12, 2000, Sanusi's counsel indicated that "[a]n appointment [to examine Sanusi] ha[d] been scheduled for February 19, 2000" and that "the doctor [would] submit the report by the first week of [March]." Because no such evidence was submitted by March 16, 2000, the IJ denied the continuance and issued his decision on the merits on that date.

On March 30, 2000, Sanusi filed a motion to reconsider and attached an affidavit from a doctor who set forth "the results of her interview and physical examination of" Sanusi—the evidence, we presume, that Sanusi's counsel had represented would be forthcoming when making the February 10, 2000 request for a third continuance. For various reasons, the IJ did not credit the doctor's evidence[7] and therefore denied the motion on April 12, 2000.

ing to the IJ, for two reasons. First, as an airline employee, Sansuni apparently "was able to travel freely out of Nigeria and returned to Nigeria of his own free will," which the IJ found tended to "negate any [claims of any] kind of fear" of persecution in Nigeria. Second, the IJ found it implausible that Sanusi could have kept a government job while concurrently opposing the government and suffering persecution on account of that activity.

5. In addition, when asked at his "credible fear interview," "What is your marital status?," Sanusi answered, "Single."

6. In addition, the IJ noted that "since the date of the original removal hearing, the situation in Nigeria has changed dramatically," that the former military government had been replaced by a "popularly elected government," and that the State Department indicated that "'there are no reports of individuals or groups being persecuted by the government for their political, religious or personal beliefs....'"

7. The IJ found that portions of the medical report depended on the credibility of Sanusi as a witness (e.g., a finding that he was "depressed") and that physical evidence potentially indicative of torture (e.g., a few scars) "may also be consistent with a lifetime of normal activity accompanied by everyday cuts and bruises or athletic injuries." In addition, the doctor's submission characterized her as a specialist in Bariatric medicine—a specialist

## I. The IJ's Denial of Sanusi's Request for a Continuance

Before examining whether the IJ erred in denying Sanusi's final request for a continuance, we must consider the threshold question of whether we possess jurisdiction to review the decision. For the reasons that follow, we hold that we may review a decision by an IJ or the BIA to grant or to deny a continuance for an abuse of discretion.

The INA allows a court considering a final order of removal pursuant to 8 U.S.C. § 1252 to review "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien." *Id.* § 1252(b)(9). Pursuant to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009 (1996) ("IIRIRA"), Congress has, however, amended the INA to preclude judicial review of any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of" asylum. 8 U.S.C. § 1252(a)(2)(B)(ii). The phrase "this subchapter" refers to subchapter II of Chapter 12 of Title 8 of the United States Code, which includes §§ 1151–1381. *See, e.g., Onyinkwa v. Ashcroft*, 376 F.3d 797, 799 (8th Cir.2004). The scope of this jurisdiction-removing provision of the IIRIRA was itself limited by section 106(a)(1)(A)(iii) of the REAL ID Act of 2005, Pub.L. No. 109–13, 119 Stat. 231, which provides that nothing in any provision of the INA "which limits or eliminates judicial review ...

in treating obesity—and did not include support for her claim to have been trained in the

shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals ...." 8 U.S.C. § 1252(a)(2)(D).

In light of that statutory landscape, we consider whether we may exercise jurisdiction to review the instant petition to the extent Sanusi challenges the IJ's denial of a continuance. First, we must assess whether the decision to grant or to deny a continuance in an immigration proceeding is "specified under [the relevant] subchapter to be in the discretion of the Attorney General." 8 U.S.C. § 1252(a)(2)(B)(ii). If so, the decision generally lies beyond judicial review, except insofar as it presents a "constitutional claim[ ] or question[ ] of law" within the meaning of 8 U.S.C. § 1252(a)(2)(D).

■ We agree with our sister Circuits that have held that the decision by an IJ or the BIA to grant or to deny a continuance in an immigration proceeding is *not* a decision "specified under [the relevant] subchapter to be in the discretion of the Attorney General." *See Abu–Khaliel v. Gonzales*, 436 F.3d 627, 633–34 (6th Cir. 2006); *Zafar v. Att'y Gen.*, 426 F.3d 1330, 1334–35 (11th Cir.2005). We are not persuaded by the reasoning of the Circuits reaching the opposite conclusion. *See, e.g., Yerkovich v. Ashcroft*, 381 F.3d 990, 995 (10th Cir.2004) (holding that "8 U.S.C. § 1252(a)(2)(B)(ii) bars review of the IJ's discretionary decision denying petitioner's motion for a continuance"); *Onyinkwa*, 376 F.3d at 799 (holding that "the power to grant continuances is within the discretion of immigration judges").

The primary argument against our exercising jurisdiction here is that pursuant to

treatment of torture victims.

8 U.S.C. § 1229a(a)(1), immigration judges have the authority to "conduct proceedings for deciding the inadmissibility or deportability of an alien," and that § 1229a is within the subchapter covered by the jurisdiction-removing provision of 8 U.S.C. § 1252(a)(2)(B)(ii). Although the presiding officer at a hearing traditionally has discretion to grant or to deny continuances requested by the parties appearing before him, we cannot conclude that the decision to grant or to deny a continuance in immigration proceedings is "specified under [the relevant] subchapter to be in the discretion of the Attorney General." Indeed, continuances are not even mentioned in the subchapter.[8] We therefore hold that 8 U.S.C. § 1252(a)(2)(B)(ii) does not deprive us of jurisdiction to review decisions by IJs to grant or to deny continuances,[9] which accords with our general presumption in favor of judicial review. *See INS v. St. Cyr,* 533 U.S. 289, 298, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (stating that despite specific jurisdiction-denying provisions, in immigration cases there still exists a "strong presumption in favor of judicial review of administrative action").

▊▊▊ Having concluded that we may review an IJ's grant or denial of a continu-

ance, we hold that we conduct that review for abuse of discretion. In so holding, we apply the same standard used by every other Circuit that entertains such claims. *See, e.g., Abu–Khaliel,* 436 F.3d at 634–35 (reviewing IJ's denial of continuance for abuse of discretion); *Witter v. INS,* 113 F.3d 549, 555 (5th Cir.1997) (same); *Onyeme v. INS,* 146 F.3d 227, 231–33 (4th Cir.1998) (same). Just as United States District Judges have broad discretion to schedule hearings and to grant or to deny continuances in matters before them, IJs have similarly broad discretion with respect to calendaring matters. The largely unfettered discretion of a district judge to deny or to grant a continuance is evidenced in our deferential review of challenges to such decisions. *See, e.g., Morris v. Slappy,* 461 U.S. 1, 11, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983) ("Trial judges necessarily require a great deal of latitude in scheduling trials. Not the least of their problems is that of assembling the witnesses, lawyers, and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons. Consequently, broad discretion must be granted trial courts on

---

**8.** Further evidence that the relevant subchapter does not itself confer discretion upon the Attorney General is provided by a regulation implementing § 1229a, which specifically addresses an IJ's authority to grant continuances during immigration proceedings. *See* 8 C.F.R. § 1003.29 ("The Immigration Judge *may* grant a motion for continuance for good cause shown.") (emphasis added). The regulation's conferral of discretion suggests that such authority is not "specified" under the "subchapter" of the INA pursuant to which the regulation was promulgated.

**9.** Another jurisdiction-denying provision potentially applicable here is 8 U.S.C. § 1252(g), which provides, in relevant part that

no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the

Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter. Pursuant to this provision, the decision of an IJ, as the designee of the Attorney General, to "adjudicate cases" is beyond our review. Although it might be argued that the decision to grant or to deny a continuance is tantamount to a non-reviewable decision to "adjudicate" a case, the Supreme Court's construction of this provision in *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), makes clear that § 1252(g) does not encompass decisions relating to grants or denials of continuances. *See Reno,* 525 U.S. at 482, 119 S.Ct. 936 (listing a decision "to reschedule [a] deportation hearing" among examples of actions not covered by § 1252(g)).

matters of continuances. . . ."). This is a burden difficult to satisfy, and Sanusi has not done so. The IJ granted two continuances, and nothing in the record suggests that his decision to deny a third request after months of delay was an abuse of discretion, notwithstanding Sanusi's contention that further evidence would be forthcoming.

## II. The Merits of Sanusi's CAT Claim

 Sanusi argues that the IJ and the BIA erred in denying his CAT claim, and he objects specifically to the finding that his testimony was not credible. In cases like this, in which the BIA adopts and affirms the IJ's opinion and supplements it with its own conclusions, we review both the opinion of the IJ and that of the BIA. *See Ming Xia Chen v. BIA*, 435 F.3d 141, 144 (2d Cir.2006). We review the factual findings of an IJ for "substantial evidence," *see, e.g., Majidi v. Gonzales*, 430 F.3d 77, 81 (2d Cir.2005), and "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," *Borovikova v. DOJ*, 435 F.3d 151, 156 (2d Cir.2006) (quoting 8 U.S.C. § 1252(b)(4)(B)).

 The findings upon which the IJ based his adverse credibility determination constitute substantial evidence and therefore are "conclusive" for purposes of our review. As we noted above, the IJ found that Sanusi's demeanor was not consistent with credible testimony, that Sanusi erroneously referred to the Social Democratic Party as the "Christian Democratic Party," and that Sanusi implausibly claimed to have maintained government employment while the government persecuted him for his political activity. Sanusi was the only witness who testified on his behalf, and he failed to produce documents supporting his claims. *See In re Dass*, 20 I. & N. Dec. 120, 124–25 (BIA 1989) (stating that while the BIA has held that an alien's testimony, without other evidence, may satisfy his burden of proof in certain scenarios, past

BIA "cases, however, do not stand for the proposition that the introduction of supporting evidence is purely an option with an asylum applicant in the ordinary case" and stating that the "general rule is that such evidence should be presented where available" (distinguishing *In re Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987))). The IJ's adverse credibility finding therefore fully supports the IJ's determination that Sanusi had not met his burden of proof in establishing eligibility for relief under the CAT. *See* 8 C.F.R. § 208.16(c)(2) ("The burden of proof is on the applicant for withholding of removal under [the CAT] to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal."); *see also Xiao Ji Chen v. DOJ*, 434 F.3d 144, 163 (2d Cir.2006) ("[W]here the applicant relies largely on testimonial evidence to establish [his] CAT claim, and does not independently establish a probability of torture apart from [his] stated fear, an adverse credibility finding regarding that testimonial evidence may provide a sufficient basis for denial of CAT relief.").

## III. The BIA's Refusal To Remand the Case to the IJ for Further Proceedings

Sanusi argues that the BIA erred in denying his motion to remand the case to the IJ for further proceedings to evaluate newly available evidence. The BIA's authority to remand a case to the IJ for further proceedings is not addressed in the INA, and regulations do not contain detailed criteria for evaluating "motions to remand." *See In re Coelho*, 20 I. & N. Dec. 464, 471 (BIA 1992) ("Motions to remand are not expressly addressed by the Act. . . ."); *but see, e.g.,* 8 C.F.R. §§ 1003.2(b)(1), (c)(4) (stating that a "motion to reopen" or a "motion to reconsider" an IJ's decision may in certain circumstances "be deemed a motion to remand for further proceedings before the Immigration Judge"). The BIA has stat-

ed in cases how it adjudicates motions expressly requesting remand, and it considers such motions differently depending on the asserted grounds. When remand is requested so that an IJ may examine newly available evidence, as occurred in this case, the BIA treats the motion as a "motion to reopen." *See Coelho*, 20 I. & N. Dec. at 471. ("In this instance, the motion to remand is in the nature of a motion to reopen since the respondent requests additional proceedings to present evidence ... which was not available during the initial proceedings."); *see also Li Yong Cao v. DOJ*, 421 F.3d 149, 156 (2d Cir.2005) ("A motion to remand that does not simply articulate the remedy sought on appeal will be held to the substantive standards applicable either to a motion to reconsider or to reopen" (citing *Coelho*)).

■ We review the BIA's denial of a motion to reopen for an abuse of discretion. *See Kaur v. BIA*, 413 F.3d 232, 233 (2d Cir.2005); *see also* 8 C.F.R. § 1003.2(c) (describing when such a motion may be granted). The Executive Branch officials charged with promulgating immigration regulations and enforcing the immigration laws of the United States have demonstrated their general antipathy to motions to reopen. As the Supreme Court has explained, "[m]otions for reopening of immigration proceedings are disfavored [by the Attorney General and those enforcing the immigration laws on his behalf] for the same reasons as are petitions for rehearing and motions for a new trial on the basis of newly discovered evidence. This is especially true in a deportation proceeding, where, as a general matter, every delay works to the advantage of the de-

portable alien who wishes merely to remain in the United States." *INS v. Doherty*, 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992) (citation omitted); *see also INS v. Abudu*, 485 U.S. 94, 110, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988) ("[T]he Attorney General's regulations ... plainly disfavor motions to reopen.").

■ The BIA by no means abused its discretion in denying Sanusi's request that his case be remanded to the IJ. *See Coelho*, 20 I. & N. Dec. at 473 ("[T]he Board ordinarily will not consider a discretionary grant of a motion to remand unless the moving party meets a 'heavy burden' and presents evidence of such a nature that the Board is satisfied that if proceedings before the immigration judge were reopened, with all the attendant delays, the new evidence offered would likely change the result in the case."). From the record before us, it does not appear that any new evidence Sanusi might have introduced would have changed the IJ's or the BIA's disposition of the case.[10] A different result on remand was especially unlikely because the IJ had already found Sanusi not to be a credible witness, and Sanusi has not proffered new evidence likely to overcome that finding or to rehabilitate his credibility. In any event, Sanusi has failed to persuade us that the BIA's refusal to remand constituted an abuse of discretion.

## Conclusion

In sum, we hold that (1) we have jurisdiction to review for an abuse of discretion a claim that an IJ wrongly denied a continuance in an immigration proceeding; (2) the IJ did not abuse his discretion in denying Sanusi's request for a continuance; (3)

---

10. Sanusi argues that remand by the BIA would have allowed him to present evidence to the IJ concerning conditions in Nigeria. His motion to remand describes evidence of general conditions and does not suggest that Sanusi was prepared to present any additional particularized evidence showing that he, personally, was "more likely than not" to be tortured. 8 C.F.R. § 208.16(c)(2) (burden of proof in CAT claims); *see also Mu Xiang Lin*

*v. DOJ*, 432 F.3d 156, 160 (2d Cir.2005) (holding that general evidence of a country's human rights violations, including instances of torture, does not support grant of relief under the CAT where neither that general evidence nor particularized evidence concerning the petitioner's own case demonstrate that a petitioner is personally more likely than not to suffer torture upon repatriation).

the IJ's decision to deny Sanusi's CAT claim on the merits was supported by substantial evidence; and (4) the BIA did not abuse its discretion when it denied Sanusi's "motion to remand" to the IJ for further proceedings.

Accordingly, the petition for review is denied.