George MORGAN, Petitioner,

v.

Alberto R. GONZALES,* United States Attorney General, Department of Homeland Security, Respondents.

Docket No. 05–0039–AG.

United States Court of Appeals, Second Circuit.

Argued: April 5, 2006.

Decided: April 20, 2006.

Gerald P. Seipp, Fort Myers, FL, for Petitioner.

* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Alberto R. Gonzales, Attorney General of the United States, has been substituted for his predecessor John Ashcroft.

Patricia L. Buchanan, Assistant United States Attorney (Michael J. Garcia, United States Attorney, Sara L. Shudofsky, Assistant United States Attorney, on the brief), United States Attorney's Office for the Southern District of New York, New York, NY, for Respondent.

Before: CABRANES and SOTOMAYOR, Circuit Judges, and GLEESON, District Judge.**

JOSÉ A. CABRANES, Circuit Judge.

George Morgan, a native and citizen of Jamaica, petitions for review of a December 13, 2004 order of the Board of Immigration Appeals ("BIA") affirming a November 13, 2004 order of Immigration Judge ("IJ") Philip J. Montante, Jr. denying Morgan's request for a continuance of his deportation proceedings. File No. A 76 161 555. Specifically, Morgan maintains that the IJ abused his discretion and violated Morgan's right to due process of law. We find the petition to lack merit, and we deny it.

We recount the facts of this case only to the extent necessary to resolve the petition. George Morgan was admitted to the United States as a non-immigrant visitor on July 21, 1993 with authorization to remain only for six months. Morgan has stayed in the United States ever since. He married Michelle Green, a United States citizen, on February 19, 1999, and on April 2, 1999, she filed a visa petition on his behalf. Morgan and Green were each interviewed on April 16, 2002,[1] and the Immigration and Nationalization Service ("INS") denied the visa petition on April 19, 2002 after finding that Morgan and Green lacked a "bona fide marital relationship." The INS's decision discussed various responses that Morgan and Green gave to questions that gauged their familiarity with one another. Morgan and Green did not know one another's date of birth. In addition, they provided inconsistent responses to questions relating to what Morgan gave Green as a birthday gift in the prior year, whether Morgan was right-handed or left-handed, the brand of cigarettes that Green smoked, when they met, how long they had known one another before getting married, whether Green had ever met Morgan's daughter, whether Green and Morgan paid their electricity bill separately from their rent, whether there were lamps in their bedroom, and whether Green had slept at home the night before the interview.

In July 2002, the INS brought removal proceedings against Morgan, charging him with removability pursuant to the Immigration and Nationality Act § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for having remained in the United States longer than allowed by his non-immigrant visa. Morgan was scheduled to appear for a hearing in New York City on January 14, 2003, but moved by letter dated December 13, 2002 for a change of venue to Buffalo, New York because he allegedly had moved to Utica, New York. That motion was granted on December 30, 2002, and Morgan was scheduled to appear before an IJ in Buffalo on February 12, 2003. Morgan then moved for a continuance on the ground that his counsel was unavailable, and the IJ granted the motion.

Morgan appeared with counsel on February 26, 2003 and sought a second continuance so that Green could file another I–130 visa petition. The government did not

---

** The Honorable John Gleeson, United States District Judge for the Eastern District of New York, sitting by designation.

1. Those interviews, meant to assess the legitimacy of the marriage, were conducted pursuant to the consent decree in Stokes v. INS, No. 74 Civ. 1022 (S.D.N.Y. Nov. 10, 1976).

object to a continuance to the extent Morgan's counsel wanted additional time to prepare, but it opposed a continuance pending the adjudication of an I–130 visa petition. The IJ granted Morgan's request for a continuance for approximately six months until August 20, 2003.

On August 20, 2003, Morgan moved for a third continuance until the I–130 visa petition that Green had filed on March 14, 2003 was adjudicated. The IJ this time denied the motion. Then, on August 27, 2003, Morgan filed a motion for a continuance—his fourth request in less than one year—of his voluntary departure hearing because his attorney allegedly was not available. That motion was granted, and Morgan's hearing was rescheduled to November 14, 2003.

At the hearing concerning the voluntary departure application on November 14, 2003, Morgan once again requested an indefinite continuance pending the outcome of Green's March 14, 2003 I–130 visa application. The government opposed this fifth request for a continuance, and the IJ denied the request on the ground that Morgan's case had been pending for over a year, that Morgan had been given repeated continuances, and that the mere fact that an application was pending did not qualify him for any relief from removal. During the voluntary departure hearing, Green testified that Morgan lied during his interview in connection with her original I–130 petition when he told the interviewer that Green had slept at home the night before the interview because Morgan had thought that if he had testified truthfully that she had not slept at home, the petition would be denied. The IJ granted Morgan's application for voluntary departure.

Morgan filed with the BIA a timely notice of appeal from the IJ's November 14, 2003 denial of a continuance. He then sought an extension of time in which to file a brief in support of his appeal, and the BIA granted the request.

On December 13, 2004, the BIA affirmed the decision because the IJ had "committed no error" in light of the fact that Morgan "failed to demonstrate good cause for a continuance." *In re Morgan,* File A 76 161 555, at 1 (BIA Dec. 13, 2004) (citing 8 C.F.R. §§ 1003.29, 1240.6).

Morgan argues that the denial of his request for an additional continuance so that Green's I–130 application could be adjudicated was an abuse of discretion and violated his right to due process of law. Recently, in *Sanusi v. Gonzales,* 445 F.3d 193, 2006 WL 998223 (2d Cir. Apr.18, 2006), we held that we have jurisdiction to review an IJ's denial of a continuance, and that we conduct that review under a highly deferential standard of abuse of discretion. *Id.* at *4; *see also Zafar v. U.S. Att'y Gen.,* 426 F.3d 1330, 1335 (11th Cir.2005) ("The grant of a continuance is within the immigration judges' broad discretion."); 8 C.F.R. § 1240.6 ("After the commencement of the hearing, the immigration judge *may* grant a reasonable adjournment either at his or her own instance or, for good cause shown, upon application by the respondent or the Service." (emphasis added)); 8 C.F.R. § 1003.29 ("The Immigration Judge *may* grant a motion for continuance for good cause shown." (emphasis added)). IJs are accorded wide latitude in calendar management, and we will not micromanage their scheduling decisions any more than when we review such decisions by district judges. *See Sanusi,* 2006 WL 998223, at *4. An IJ would, however, abuse his discretion in denying a continuance if "(1) [his] decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding or (2)[his] decision—though not necessarily the product of a

legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir.2001).

Morgan does not dispute that at the time his continuance was denied he was ineligible for adjustment of status pursuant to 8 U.S.C. § 1255(a) because he did not have a qualifying visa "immediately available." Nonetheless, he contends that the IJ's decision was an abuse of discretion because "the continuance request in this case was predicated solely upon the delay by [the Department of Homeland Security] in adjudicating the Morgans' I–130 petition." [2] Pet'r's Reply Br. at 7. He also argues that by virtue of the denial of the requested continuance his "rights to fundamental fairness and due process were violated." Pet'r's Br. at 8.

■ Despite Morgan's argument to the contrary, he had no right to the adjudication of a second I–130 petition stemming from a marriage that had already been determined to lack *bona fides. See In re Garcia*, 16 I. & N. Dec. 653, 657 (BIA 1978) ("It clearly would not be an abuse of discretion for the immigration judge to summarily deny a request for a continuance . . . upon his determination that the visa petition is frivolous or that the adjustment application would be denied on statutory grounds or in the exercise of discretion notwithstanding the approval of the petition."), *modified on other grounds by In re Arthur*, 20 I. & N. Dec. 475 (BIA 1992); *see also Onyeme v. INS*, 146 F.3d 227, 233 (4th Cir.1998) ("[U]nder *Garcia* the IJ retains the discretion to deny a request for a continuance where the adjustment of status application would be denied on statutory grounds."). This remains true irrespective of the speculative possibility that the couple might have "orchestrated a marriage of convenience, but subsequently fell in love after their immigration application was rejected." Pet'r's Br. at 14 (citing *Green Card* (Touchstone Pictures 1990)). At the time of the hearing, Morgan was not eligible for adjustment of status, and he had no right to yet another delay in the proceedings so that he could attempt to become eligible for such relief. *See Zafar*, 426 F.3d at 1336 ("[S]ince all that the petitioners offered the immigration judges was the 'speculative' possibility that in the *future* they *may* receive . . . labor certification, petitioners have failed to demonstrate that they had a *visa petition* 'immediately available' to them. . . ." (emphases in original)).

■ Morgan's finds no support for his asserted right to a continuance in the Due Process Clause of the Fifth Amendment. Although an alien in deportation proceedings is entitled to due process of law, *see Reno v. Flores*, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993), we remain mindful that those proceedings are meant "to provide a streamlined determination of eligibility to remain in this country, nothing more." *INS v. Lopez–Mendoza*, 468 U.S. 1032, 1039, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). Morgan "points to nothing in the record suggesting that [he] was denied a full and fair opportunity to present [his] claims; nor has [he] established that the IJ or BIA otherwise deprived [him] of fundamental fairness." *Xiao Ji Chen v. DOJ*, 434 F.3d 144, 155 (2d Cir.2006); *see also Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212, 73 S.Ct. 625, 97

---

2. As of March 1, 2003, the INS was reconstituted into two agencies, the Bureau of Immigration and Customs Enforcement and the U.S. Citizenship and Immigration Services, both within the Department of Homeland Security. *See Sall v. Gonzales*, 437 F.3d 229, 231 n. 4 (2d Cir.2006).

L.Ed. 956 (1953) ("[A]liens ... may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.").

■ We disagree with Morgan's contention that it was outside the range of permissible decisions for the IJ to deny the requested continuance even though there was a visa petition filed on Morgan's behalf that was pending. *See* Pet'r's Reply Br. at 7 (arguing that "the IJ does not possess 'discretion' to allow [the Department of Homeland Security] to pursue a final deportation order when it has a petition before it that requires adjudication"). Just as an IJ may grant a motion to reopen completed proceedings "in the exercise of discretion" to allow an alien to pursue an application for adjustment of status if certain factors are present, *see In re Velarde–Pacheco*, 23 I. & N. Dec. 253, 256 (BIA 2002), so too may an IJ, *in his discretion*, decide whether to delay pending proceedings so that an alien can seek eligibility for particular relief. *See, e.g., Witter v. INS*, 113 F.3d 549, 555 (5th Cir.1997) ("The grant of a continuance of a deportation hearing lies within the sound discretion of the immigration judge, who *may* grant a continuance upon a showing of good cause." (emphasis added)). We conclude that in the circumstances presented here, it was not an abuse for the IJ to exercise his discretion to deny Morgan a continuance. *See Onyinkwa v. Ashcroft*, 376 F.3d 797, 799–800 (8th Cir.2004) (declining to exercise jurisdiction over the denial of a continuance for the adjudication of a second marriage-based visa petition, but noting that "if we were to consider the merits ... we would not find that the IJ abused her discretion by denying the continuance"); *Oluyemi v. INS*, 902 F.2d 1032, 1034 (1st Cir.1990) (Breyer, C.J.) (concluding that an IJ did not abuse the "broad discretion that *Garcia* confers upon

him in refusing to delay [a deportation] hearing because he believed that the adjustment petition eventually would be denied," notwithstanding that the alien's wife had filed a visa petition that was still pending).

We have recently commented that immigration cases are not "games." *See Ming Shi Xue v. BIA*, 439 F.3d 111, 113 (2d Cir.2006). Indeed, they are not, and we will not, nor should an IJ be required to, indulge Morgan's attempts to introduce needless delay into what are meant to be "streamlined" proceedings. *Cf. INS v. Doherty*, 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992) ("Motions for reopening of immigration proceedings are disfavored for the same reasons as are petitions for rehearing and motions for a new trial on the basis of newly discovered evidence. This is especially true in a deportation proceeding, where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." (citation omitted)); *Wei Guang Wang v. BIA*, 437 F.3d 270, 274 (2d Cir.2006) (noting that the "apparent gaming of the system in an effort to avoid deportation is not tolerated by the existing regulatory scheme"). That Morgan's hearing was not once again postponed so that he could try to develop a new claim does not suggest that he was deprived of that to which he was entitled— namely, a fair opportunity to present whatever viable claims he could bring at the time his case was adjudicated.

We have considered all of Morgan's arguments and find them to be without merit. Accordingly, we DENY the petition for review.