06-3493-ag
Rajah v. Mukasey

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

————

August Term, 2007

(Argued: November 21, 2007                    Decided:   September 24, 2008)

Docket No. 06-3493-ag

————————

MOHAMED RAJAH,

*Petitioner*,

– v. –

MICHAEL B. MUKASEY,[1] as Attorney General of the United States; MICHAEL CHERTOFF, as Secretary of the U.S. Department of Homeland Security; and MARTIN FICKE, as Special Agent-in-Charge of the New York District of the U.S. Immigration and Customs Enforcement,

*Respondents*.

————————

Before: WINTER, WALKER, and CALABRESI, *Circuit Judges*.

Petition for review of denial by an Immigration Judge, affirmed by the Board of

Immigration Appeals ("BIA"), (1) to terminate immigration proceedings, (2) to suppress

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey has been substituted for former Attorney General Alberto R. Gonzales as the respondent in this case.

evidence gathered through the National Security Entry-Exit Registration Program, and (3) to grant a continuance pending the adjudication of a labor certification applied for on behalf of petitioner Rajah.  The petition for review is GRANTED, the BIA's order is VACATED, and the case is REMANDED to the BIA for further proceedings consistent with this opinion.

> ANN C. POTTRATZ (Wanyong Austin, *on the brief*), Lutheran Social Services of N.Y., New York, N.Y., *for Petitioner*.
>
> SONG E. PARK (Peter D. Keisler, Assistant Attorney General, M. Jocelyn Lopez Wright, Assistant Director, *on the brief*), Office of Immigration Litigation, Washington, D.C., *for Respondents*.

———————————————————

CALABRESI, *Circuit Judge*:

This case presents us with the thorny task of reviewing a discretionary determination of the Immigration courts – whether or not to grant a continuance – a determination that must lie, as we have said, "within the range of permissible decisions." *Morgan v. Gonzales*, 445 F.3d 549, 552 (2d Cir. 2006) (quoting *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)). We lack guidance from the BIA, however, as to the contours of this range, and although we have found certain decisions denying continuances clearly within the meets and bounds of permissibility, the case before us does not neatly fall into such a category.  Here, petitioner requested a continuance where an application for labor certification, which, in conjunction with an I-140 employment-based visa, would allow petitioner to adjust to legal status, had been timely filed on petitioner's behalf.  Through no fault of petitioner's, however, and due to unexpected and lengthy delays, the certification had not yet been adjudicated by the Department of Labor.

The Immigration Judge ("IJ"), affirmed by the BIA, denied the continuance, finding, without discussion, that petitioner had "sufficient time."   During the pendency of his appeal before this Court, petitioner's labor certification was approved.

We cannot adequately consider whether the agency abused its discretion in denying petitioner's request for a continuance in the case before us in the absence of standards that reflect the various situations of those seeking such continuances.  These standards must take into account (a) the intent of Congress in creating a mechanism for adjusting status based on labor certification and visa eligibility, as expressed in 8 U.S.C. § 1255(i), (b) the lengthy delays and uncertainties caused by the implementation of this mechanism, and (c) the effect, if any, in a given case, of a labor certification being approved after the agency has acted, but while the case is still *sub judice*.  In remanding to the BIA, we seek a quantum by which better to measure the reasonableness of a petitioner's request for a continuance, and a clearer demarcation of the range of permissibility to be exercised by the IJ.  It is the BIA's responsibility and opportunity to provide these standards in the first instance.  *See Poole v. Mukasey*, 527 F.3d 257, 259 (2d Cir. 2008) (observing with approval that "[n]ormally, the Government urges us to insist that the BIA have the initial opportunity to construe the statutes it administers"); *cf. Mei Juan Zheng v. Mukasey*, 514 F.3d 176, 184 (2d Cir. 2008) (remanding to the BIA for further consideration of a frivolousness finding for the reasons set forth in *Yuanliang Liu v. U.S. Dep't of Justice*, 455 F.3d 106 (2d Cir. 2006)); *Yuanliang Liu,* 455 F.3d at 116 (remanding to the BIA for explication of standards regarding frivolousness determinations).[2]

---

[2] As noted *infra*, the Attorney General has expressly approved this approach.

3

## BACKGROUND

Petitioner Mohamed Rajah ("Petitioner" or "Rajah"), a native and citizen of Morocco, entered the United States in December 1994 on a six-month nonimmigrant (tourist) visa. He remained in the country after his visa expired on May 12, 1995. In April 2001, an application for labor certification was filed with the Department of Labor on Rajah's behalf by Rajah's employer, Crosslands Transportation, Inc. This certification was approved shortly before oral argument in this case, on July 11, 2007. On January 9, 2003, Rajah went to the offices of the Immigration and Nationality Service ("INS") in New York City,[3] in order to register with the United States government pursuant to the National Security Entry-Exit Registration System ("NSEERS"), which had been created in the aftermath of the terrorist attacks on September 11, 2001.[4] At that time, Rajah was given a notice requiring him to return on April 22, 2003, in order to be served with a Notice to Appear.

On April 25, 2003, immigration officials, now part of the Department of Homeland Security ("DHS"), began removal proceedings against Rajah, charging him as subject to removal

_____

[3] On March 1, 2003, the Immigration and Nationality Service ("INS") was reconstituted as the Bureau of Customs and Immigration Enforcement and the Bureau of U.S. Citizenship and Immigration Services, both within the Department of Homeland Security ("DHS").

[4] The NSEERS program required all nonimmigrant males, aged 16 or older, from twenty-five designated countries, to register with DHS, to submit various documents and information, and to be fingerprinted and photographed. *See* 8 C.F.R. §§ 214.1(f), 264.1(f)(4). These aliens were required to report to DHS "upon arrival, approximately 30 days after arrival; every twelve months after arrival; upon certain events, such as a change of address, employment or school; and at the time they leave the United States." 67 Fed. Reg. 52,584 (Aug. 12, 2002). (The requirements of 30-day and one year residency reports were suspended by DHS in December 2003. *See* DHS, Fact Sheet: Changes to NSEERS, Dec. 1, 2003, *available at* http://www.dhs.gov/xnews/releases/press_release_0305.shtm.) Morocco was one of the countries whose citizens were subject to NSEERS. *See* 67 Fed. Reg. 70,526 (Nov. 22, 2002).

for overstaying his six-month nonimmigrant visa. *See* 8 U.S.C. § 1227(a)(1)(B). Rajah was ordered to appear before an Immigration Judge ("IJ") on May 30, 2003. The hearing was postponed to August 1, 2003 by IJ Barbara Nelson to give Rajah an opportunity to get an attorney. At the August 1 hearing, Rajah submitted a letter from the Arabic American Family Support Center, which stated that the Center was "actively making efforts to find [Rajah] legal counsel," but that due to the "overwhelming number of special registrants [under NSEERS]" the Center had thus far been unable to secure Rajah legal representation. IJ Nelson agreed to adjourn the hearing until September 26.

In a letter dated September 24, the City Bar Fund, an Association of the Bar of the City of New York Fund, Inc., requested that IJ Nelson adjourn Rajah's proceedings for two months, during which time the City Bar Fund would prepare a lawyer to undertake Rajah's representation. This letter detailed the creation of a "Special Registration Project," designed to provide legal assistance to those aliens, like Rajah, who had been subjected to the NSEERS program. This Project sought to provide pro-bono attorneys to those aliens placed in removal proceedings as a consequence of having registered pursuant to the NSEERS program, and, to that end, had prepared an October 16, 2003 training session on the legal issues raised by NSEERS for attorneys willing to serve. In response to this letter, at Rajah's hearing on September 26, IJ Nelson agreed to an adjournment—albeit shorter than that requested by the City Bar Fund – of one month.

On October 31, 2003, Rajah and his lawyer, Justine Foreman, arrived at the scheduled hearing. Ms. Foreman requested an additional brief adjournment as she had "just received [Rajah's] case this week," and had not yet had time to review his file. IJ Nelson agreed to

5

postpone the case until November 21, 2003.

On November 21, 2003, Rajah, now represented by Jocelyn Normand, requested a continuance, as Rajah's employer had filed a labor certification on his behalf on April 27, 2001. IJ Nelson responded that "Mr. Rajah has had four adjournments. I don't adjourn cases for labor certs." She continued, "I'll give you one adjournment to apply for any other relief he may be eligible for, which might be voluntary departure, it might be asylum, I don't know what it would be. But at the next hearing he either has to file an application for some relief or apply for voluntary departure. Or if the labor cert has been approved then, if there's an I-140 pending I adjourn for that." [5] Ms. Foreman clarified to IJ Nelson that should Rajah be unable to file an I-140 by the date of the next adjournment—his ability to do so contingent on the Department of Labor's having approved his labor certification—she, as his lawyer, intended to file a motion to terminate the proceedings. Given that information, IJ Nelson adjusted the schedule, requiring the termination motion to be filed on December 19, 2003.

At the hearing on December 19, IJ Nelson gave DHS a month to respond to Rajah's motion to terminate proceedings, and scheduled the next hearing for January 16, 2004. As of that date, IJ Nelson had not received any submission from DHS in response to Rajah's motion to

---

[5] Immigration and Nationality Act (INA) section 245(i), 8 U.S.C. § 1255(i), offered a route to legalization for certain aliens, physically present in the United States, who were the beneficiaries of an application for labor certification filed prior to April 30, 2001. ( This sunset date was extended by the LIFE Act, enacted on December 21, 2000, Pub. L. No. 106-554, 114 Stat. 2763 (codified as amended at 8 U.S.C. §1255 (2000)).) Labor certification is a prerequisite to an employment-based visa, for which an employer must file an I-140 petition. In order to adjust status under § 1255(i), an "immigrant visa must be immediately available to the alien at the time the application [to adjust status] is filed." 8 U.S.C. § 1255(i)(2)(B). Rajah does not contend that he was eligible for adjustment of status, merely that he had, before the deadline of April 30, 2001, begun the process created in § 1255(i).

terminate on various constitutional grounds. Eventually, the hearing resumed on March 19, 2004, at which time IJ Nelson denied Rajah's motion to terminate. At that hearing, Rajah did not admit removability, and IJ Nelson requested evidence from DHS to establish Rajah's removability, as charged in the initial Notice to Appear. DHS offered a copy of Rajah's passport and his I-94 form, the admission of which was objected to by Rajah's counsel. Rajah's counsel then filed a motion to suppress these documents. After the government responded to that motion, IJ Nelson set an individual hearing for Rajah on June 25, 2004.

On June 25, Rajah's lawyer again raised the labor certification question. She noted that Rajah's case had already gone through many of the required stages[6] and that she had discussed the situation with Rajah's attorney in charge of the certification. IJ Nelson agreed to adjourn the case "one last time," saying "[t]he next time you come in I'm going to need more than just what you talked to the attorney about. I'm going to need something, a letter from the attorney or something from the Department of Labor showing what cases they're up to." The case was adjourned to November 19, 2004.

In November, IJ Nelson asked "is the labor cert approved?" Rajah's lawyer responded, "No, Judge. The last hearing you asked us to get a letter." IJ Nelson then responded, "well, I also told you at the last hearing that it was a final adjournment for the labor certification to be adjudicated and if nothing had been finalized on that he would simply have to apply for whatever

---

[6] Acquiring labor certification for a particular alien demands a variety (changing over time) of specific steps to be taken by the employer. Rajah's lawyer notes that in his case, the employer had already gone through the stages of advertising the position to U.S. citizen workers.

relief he was entitled to, whether it be asylum, voluntary departure, whatever." [7] She adjourned the hearing until December 16, 2004, in order to provide Rajah with an interpreter at his final hearing.

At the December 16, 2004 hearing, IJ Nelson found Rajah removable. In an effort to secure a continuance for his labor certification proceedings, Rajah's lawyers submitted the Seventh Circuit's decision in *Suban v. Ashcroft*, 383 F.3d 591, 593-94 (7th Cir. 2004) (finding an IJ erred in failing to grant petitioner a third continuance, where the denial was based simply on the fact that the labor authorities had not acted yet, instead of anything more particularized to the alien). IJ Nelson noted that the case was "not binding on the Immigration court sitting [] within the 2nd Circuit's jurisdiction," and further stated that "the Court thinks that adjourning the case for one and a half years is sufficient."

Rajah timely appealed the Immigration Judge's decisions—her denials of his motions to terminate and to suppress evidence, and her decision ordering him removed from the United States—to the Board of Immigration Appeals ("BIA"). On June 27, 2006, the BIA dismissed Rajah's appeal, addressing in some detail the constitutional arguments attacking the NSEERS program that Rajah had presented in his submissions before the IJ. On the subject of the IJ's denial of a continuance based on the pending labor certification, the BIA found that the IJ had

[7] Rajah did submit a letter to the IJ on November 19, 2004. The letter was dated June 16, 2004, from the Alien Employment Certification Office of the State of New York Department of Labor. The letter stated that although Rajah's labor certification had been filed on his behalf by Crosslands Transportation, Inc., on April 30, 2001, the case was "converted" on April 9, 2004. The letter continued, noting that "[b]ased on Federal procedures, all cases are processed according to the date of conversion and not the filing date." It further stated that "the sunset of Section 245(i) in April 2001 caused the filing of thousands of unanticipated applications," and, in conclusion, that "[w]e are working to the limits of our abilities to process these applications as quickly as possible."

8

properly denied Rajah's motion for a continuance, based on the ground that "having adjourned the case for a year and a half was sufficient time." In addition, the BIA stated that Rajah "did not provide any specific information from the Department of Labor showing when his application might be adjudicated, and to date, the respondent has not provided any information on the status of his application."

Rajah petitions this Court for review of the BIA's decision, again raising the various legal and constitutional claims arguing that the NSEERS program, and DHS's implementation of it, were unconstitutional and *ultra vires*, and, consequently, that the agency erred in failing (a) to suppress the evidence gathered through the NSEERS registration process and (b) to terminate the proceedings against Rajah. Rajah also contends that the BIA and the IJ abused their discretion in denying his request for a continuance pending the adjudication of his labor certification. Because we cannot adequately consider whether the agency abused its discretion in denying petitioner's request for a continuance in the case before us in the absence of standards that reflect various situations of those seeking such continuances, we remand the case to the BIA for an explication of the standards applicable in such cases.[8]

## DISCUSSION

An Immigration Judge may grant a motion for continuance for good cause shown. *See* 8 C.F.R. § 1003.29. We review an IJ's refusal to grant a continuance for abuse of discretion. *Sanusi v. Gonzales*, 445 F.3d 193, 199 (2d Cir. 2006) (per curiam). Under this standard, "[a]n IJ

---

[8] Petitioner's remaining arguments are addressed in the separate opinion filed concurrently herewith. *See Rajah v. Mukasey*, — F.3d —, Nos. 06-3493-ag, 06-3811-ag, 06-4102-ag, 06-5390-ag (2d Cir. XXX XX, 2008).

9

would [] abuse his discretion in denying a continuance if (1) [her] decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding or (2) [her] decision – though not necessarily the product of a legal error or a clearly erroneous factual finding – cannot be located within the range of permissible decisions." *Morgan v. Gonzales*, 445 F.3d 549, 551-52 (2d Cir. 2006) (quoting *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 169 (2d Cir. 2001)) (quotation marks omitted).

In some recent cases in which we have had occasion to address this issue, we have identified certain circumstances in which we have found it clear that the IJ has not abused his or her discretion in failing to grant a continuance. The factual records in these cases amply support the IJs' decisions as being well within the zone of permissibility. For example, in *Morgan*, we found that the IJ did not abuse his discretion in denying a continuance so that a second petition to adjust status on the basis of a marriage could be adjudicated, where the marriage in question had already been determined not to be bona fide. 445 F.3d at 552. In *Sanusi*, we found no abuse of discretion in denying a continuance, where petitioner was seeking to supplement the record with medical evidence in support of a claim under the Convention Against Torture, and where petitioner had been found incredible on his other claims for relief. 445 F.3d at 199-200.

Most recently, in *Elbahja v. Keisler*, 505 F.3d 125 (2d Cir. 2007) (per curiam), we were confronted with a situation in which an alien, after having been twice denied in his attempts to adjust his status based on his marriage to a U.S. citizen, next sought cancellation of removal based on his marriage. During the pendency of these proceedings, however, Elbahja divorced his wife, and decided to seek adjustment of status based on what his counsel represented as an approved labor certification and an approved I-140 employment-based visa. After having

10

requested a continuance to obtain copies of these approved documents, counsel, at the subsequent hearing, indicated to the IJ that neither document had been approved by the Department of Labor and provided no information concerning the status of the certification application. At this point, the IJ denied a further continuance. As with the petitioners in *Morgan* and *Sanusi*, there was ample indication on the record that Elbahja was not proceeding in good faith, particularly given the clear misrepresentation of the status of his labor certification and with various and changing attempts to seek relief over three years of removal proceedings.

In *Elbahja*, we stated that "it does not constitute an abuse of discretion for an IJ to decline to continue a removal proceeding in order to permit adjudication of a removable alien's pending labor certification." *Id.* at 129. And, certainly, in the circumstances presented in *Elbahja*, it did not. We further noted that other circuits, namely the Third, Fifth and Eleventh, had determined that, because any eventual adjustment of status would be "speculative" in the absence of an approved labor certification, as the "mere filing of a labor certificate does not make an alien *eligible* for adjustment of status under § 1255(i)." *Zafar v. U.S. Attorney Gen.*, 461 F.3d 1357, 1363 (11th Cir. 2006). This statement, too, is undoubtedly correct, as the adjustment of status regulation, 8 C.F.R. § 245.1(a), requires that an immigrant visa be "immediately available at the time of filing. . . ."

Nonetheless, the reasoning of the Eleventh Circuit, and our own positive description of it in *Elbahja*, leave open the fundamental question, raised by this Court in *Thapa v. Gonzales*, 460 F.3d 323, 335 (2d Cir. 2006): "whether a system that specifically provides for cancellation of removal [or adjustment of status] on the basis of employment certification can escape being arbitrary and capricious where it does not afford adequate time for a petitioner to obtain such

11

labor certification, or where there is no reasoned standard for what length of time would be adequate." *Id.* at 336 n.5.

In *Subhan v. Ashcroft*, 383 F.3d 591 (7th Cir. 2004), the Seventh Circuit, likewise concerned with this express issue, found that the IJ had erred in not granting petitioner a third continuance where the ground for the application was adjustment of status based on employment entitlement. The Seventh Circuit noted that the IJ's denial was "based simply on the fact that the labor authorities had not acted yet . . . instead of anything more particularized to the alien." *Id.* at 593-94. In doing so, the Circuit noted the absence of agency standards and reasoning going beyond the mere fact that the labor certification had yet to be issued.

In view of the divergence of views both among the circuits and within our own circuit, it seems especially important to get, from the agency charged with this area of law, a reasoned set of standards explicating when continuances for labor certification are within the "range of permissible decisions" available to an IJ, and when they are not. We have sometimes asked for standards of the agency in other areas of immigration law. *See, e.g.*, *Liu*, 455 F.3d at 116 (remanding to the BIA to establish standards regarding frivolousness determinations). Our actions in this regard have received the express commendation of the Attorney General. *See* Board of Immigration Appeals: Publication of Precedent Decisions, 73 Fed. Reg. 34,654, 34,660 (proposed June 18, 2008) (to be codified at 8 C.F.R. pt. 1003) ("[R]ather than undertaking to establish its own legal standards as a matter of first impression, the court [in *Liu*] remanded the case to the Board to provide precedential guidance on the issues arising under this provision. The Second Circuit's explanation of its reasons for doing so are relevant in a broader sense . . . ."); *see also INS v. Ventura*, 537 U.S. 12, 16 (2002) (agreeing with the Government that "[g]enerally

12

speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands," and noting the importance of this principle in the immigration context); *Poole*, 527 F.3d at 259 (same).

As we noted earlier, there are, of course, cases, in this area where the denial of a continuance is clearly within the discretion of the IJ, *see, e.g.*, *Elbahja*, 505 F.3d 125, and undoubtedly some where the denial would be an abuse. But there are also those in the middle as to which clear standards would be extremely helpful.[9] The case before us is one of these.

Rajah's labor certification having not been approved, IJ Nelson summarily denied Rajah's request for a continuance, as she earlier had indicated was her practice.[10] Yet Rajah had provided the IJ with letter evidence that processing of labor certifications was extremely backlogged, and that the New York Department of Labor was that "working to the limits of [its] abilities to process these applications as quickly as possible." The IJ, and the BIA, determined that the roughly eighteen month time span of Rajah's removal proceedings was "sufficient time"—but did not elaborate. Since most of the previous delays were not particularly linked to the labor certification, one might ask, sufficient for what?

But still, it cannot be that the open-ended labor certification processes can give rise to endless continuances and delays. And after all, the IJ denied the continuance only after the labor certificate had been pending for three and half years and after multiple continuances during the eighteen months it was pending before the IJ—including an additional one month continuance

---

[9] The same was also true in cases that, like *Liu*, raised the question of when frivolousness determinations were appropriate.

[10] On November 21, 2003, IJ Nelson indicated that she didn't "adjourn cases for labor certs."

after counsel had already been granted "one last" continuance for five months.

But it also seems doubtful that an IJ can properly decide never to grant such continuances (as the IJ suggested in the case before us—but perhaps did not do). Given the delays endemic in almost every stage of acquiring any visa, it is imperative that the agency connect the notion of "sufficient time" with the practicalities of the labor certification and immigration process as well as with the intentions of Congress (1) in creating the labor certification and adjustment of status provisions in § 1255(i), and (2) in extending the sunset clause for filing for labor certification. It would also be important for the BIA to specify what significance, if any, should attach to the issuance of a labor certification after the agency that denied the continuance has acted, but while the case is still pending in the courts, or before the agency on remand, a motion to reopen, or for other reasons.

It is for the BIA in the first instance thus to identify the boundaries of the discretion that its judges may exercise. *See, e.g.*, *Ventura*, 537 U.S. at 16; *Yuanliang Liu*, 455 F.3d at 116. And a case such as this one, where the petitioner was granted six continuances for various reasons, and in which the labor certification was approved not long after the BIA affirmed the IJ's denial of a continuance, is an especially apt one for the BIA to consider these boundaries.

To that end, we GRANT the petition for review, VACATE the BIA's order, and REMAND the case to the BIA for further proceedings consistent with this opinion.