Alvaro Garcia PORTILLO, Petitioner,

v.

Eric H. HOLDER, Jr., Attorney General,[1] Respondent.

No. 08–5195–ag.

United States Court of Appeals, Second Circuit.

Oct. 26, 2009.

---

1. Eric H. Holder, Jr., is automatically substituted as the respondent in this case pursuant to Federal Rule of Appellate Procedure 43(c)(2).

Robert C. Ross, Esq., West Haven, CT, for Petitioner.

Samia Naseem, Office of Immigration Litigation; Tony West, Assistant Attorney General, Civil Division; Luis E. Perez, Senior Litigation Counsel, Department of Justice Washington, DC, for Respondent.

Present: ROSEMARY S. POOLER, B.D. PARKER, and DEBRA ANN LIVINGSTON, Circuit Judges.

### SUMMARY ORDER

Petitioner Alvaro Garcia Portillo ("petitioner") seeks review of a September 29, 2008, 2008 WL 4647012, order and decision of the BIA, affirming the November 7, 2006 order and decision of the Immigration Judge (Strauss, J.), denying petitioner's request for a continuance and ordering petitioner removed to Peru. We assume the parties' familiarity with the underlying facts and procedural history.

The issue in this appeal is whether the BIA erred in holding that the Immigration Judge ("IJ") was correct in denying a continuance to allow petitioner time to wait for a visa number to become available. Petitioner is the beneficiary of an approved labor certification and an approved I–130 petition. However, petitioner cannot apply to adjust his status to that of lawful permanent resident until a visa is available. Because of the backlog of visa applications, an applicant sometimes must wait years for a visa to become available and there is no way to predict exactly how long an applicant will be required to wait. Similar delays plague other steps in the process. Thus, the question often arises of when and for how long an IJ should continue removal proceedings to allow for an alien to become eligible for adjustment of status.

We review an IJ's denial of a continuance for abuse of discretion. *See Sanusi v. Gonzales,* 445 F.3d 193, 199 (2d Cir.2006). Under this standard, "[a]n IJ would [ ] abuse his discretion in denying a continuance if (1) [his] decision rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding or (2) [his] decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *Morgan v. Gonzales,* 445 F.3d 549, 551–52 (2d Cir.2006) (quoting *Zervos v. Verizon New York, Inc.,* 252 F.3d 163, 169 (2d Cir.2001)).

Using this standard, we have affirmed several denials of continuances to allow for adjudication of pending labor certifications. *See Morgan,* 445 F.3d at 553; *Elbahja v. Keisler,* 505 F.3d 125, 129 (2d Cir.2007). In *Elbahja,* a case cited by the BIA in its

decision below, we affirmed the denial of a continuance on the grounds that Elbahja was "at the first step in [a] long and discretionary process" and that petitioner had not acted in good faith in asking for a series of continuances for a variety of reasons during the proceedings. 505 F.3d at 129. Likewise, in *Morgan,* we affirmed, stating that "we will not, nor should an IJ be required to, indulge Morgan's attempts to introduce needless delay into what are meant to be 'streamlined' proceedings." *Morgan,* 445 F.3d at 553.

However, in *Rajah v. Mukasey,* we vacated the BIA's order and remanded to the BIA so that it could develop standards for when a continuance should be granted to allow for adjudication of pending labor certifications. 544 F.3d 449, 456 (2d Cir. 2008). Noting that Rajah was not himself responsible for any of the delays and that his certification had actually been approved while the case was on appeal, we raised the question of "whether a system that specifically provides for [adjustment of status] on the basis of employment certification can escape being arbitrary and capricious where it does not afford adequate time for a petitioner to obtain such labor certifications, or where there is no reasoned standard for what length of time would be adequate." *Id.* at 454 (quoting *Thapa v. Gonzales,* 460 F.3d 323, 336 n. 5 (2d Cir.2006)). We stated that while there are some cases in which the denial of a continuance is clearly within the discretion of the IJ, *see, e.g., Elbahja,* 505 F.3d 125, other cases are less clear, and that "[i]t is for the BIA in the first instance thus to identify the boundaries of the discretion that its judges may exercise." *Id.* at 456.

Although the BIA has not yet proffered such standards in response to *Rajah,* in *In Re Hashmi,* 24 I. & N. Dec. 785 (BIA 2009), the BIA did announce the relevant factors when a petitioner seeks a continuance to await adjudication of an I–130 in the family-based visa context. *Hashmi* was decided after the IJ's decision and the BIA's order affirming the decision in this case. Thus, we do not know whether the BIA would have applied the *Hashmi* factors or, either in this case or on remand in *Rajah,* whether the BIA would have developed different standards for continuances in the labor-based visa context. We find it prudent, therefore, to remand to the BIA to decide in the first instance whether the denial of a continuance was justified in this case.

Respondent argues that a remand is unnecessary because a continuance to wait for a visa number would have been futile given the IJ's conclusion that petitioner had not presented sufficient evidence that he would be eligible for adjustment of status when a visa number became available. *See Chen v. U.S. Dept. of Justice,* 471 F.3d 315, 338 (2d Cir.2006) ("[A]n error does not require a remand if the remand would be pointless because it is clear that the agency would adhere to its prior decision in the absence of error."). We conclude, however, that the IJ made clearly erroneous factual findings in assessing whether there was sufficient evidence that the petitioner was eligible for adjustment of status, and, therefore, that the IJ's denial of a continuance on that ground was an abuse of discretion.

Petitioner, having admitted to being present in the United States without being admitted or paroled, would normally be ineligible to apply for adjustment of status. However, petitioner argued before the IJ that he was eligible for adjustment under 8 U.S.C. § 1255(i), which allows an alien "who is the beneficiary ... of (i) a petition for classification under section 1154 of this title that was filed with the Attorney General on or before April 30, 2001; or (ii) an application for a labor certification under section 1182(a)(5)(A) of this title that was

filed pursuant to the regulations of the Secretary of Labor on or before such a date" to apply for adjustment of status. 8 U.S.C. § 1255(i). Although petitioner's labor certification was filed after April 30, 2001, he alleges that his wife filed a I–130 petition under 8 U.S.C. § 1154 prior to that date, which would mean that he was "grandfathered" under Section 1255(i).[2]

At the November 7, 2006 hearing before the IJ, petitioner submitted as proof that his wife had filed the I–130 petition the following evidence: a return receipt card stamped as received by the Vermont Service Center and a cashed check made out for the then-required amount for an I–130 petition in April 2001 of $110 bearing the Vermont Service Center's stamp and a notation of a case number. In addition, the ICE trial attorney submitted an internet printout from the USCIS Case Status Online for an I–130 petition with the same case number as the one printed on the check. The printout indicated that the last activity in the case took place on January 6, 2005, nearly four years after the petition was initially filed.

The ICE trial attorney asked for a merits hearing on the grandfathering issue, to which the IJ responded, "I'm not going to set it for a merits hearing. I can't do that." On the basis of petitioner's evidence and the ICE trial attorney's statement that "I don't have any I–130 in the file," the IJ concluded in his oral decision that "[t]he Court does not find there's sufficient evidence to show that he would even be grandfathered under 245–I."

However, the IJ neglected to acknowledge that the check had been cashed and hand-inscribed with a case number, indi-

cating that it likely was sent to, and received by, the Vermont Service Center. On review, the BIA concluded that the certified mail return receipt card was "not signed by the recipient," without acknowledging that the copy of the mail receipt in the record shows that it was stamped by the recipient. Finally, the IJ seemed to find it significant that the internet printout from USCIS Case Status Online did not bear petitioner's name. But, neither the IJ nor the BIA mentioned that the cashed check and the internet print-out bore the same case number, raising a reasonable inference that the I–130 was actually filed. Given these factual errors, we remand to the BIA to determine whether petitioner would be eligible for adjustment of status based on all of the evidence presented.

We are further persuaded that remand is appropriate because, putting aside the clearly erroneous factual findings, the only other reason given by the IJ for the denial of the continuance was that "such a long continuance is simply not warranted." However, the BIA indicated in *Hashmi* that "[t]he number and length of prior continuances are not alone determinative" in deciding whether to grant a continuance. 24 I. & N. Dec. at 794. Although, as we explained above, it is unclear whether the *Hashmi* factors also apply in the labor-based visa context, we can think of no reason to make such a distinction between the two visa categories. In this case, petitioner was not responsible for the delay and this was his first request for a continuance to wait for visa availability. We believe these facts counsel in favor of granting a continuance, although we leave

---

**2.** Under the regulations,

  [a] visa petition that was properly filed on or before April 30, 2001, and was approvable when filed, but was later withdrawn, denied, or revoked due to circumstances that have arisen after the time of filing, will preserve the alien beneficiary's grandfathered status if the alien is otherwise eligible to file an application for adjustment of status under section 245(i) of the Act [8 U.S.C. § 1255(i) ].

8 C.F.R. § 245.10(a)(3).

that determination to the BIA to make in the first instance.[3]

We therefore GRANT the petition for review, VACATE the BIA's decision, and REMAND to the BIA for further proceedings consistent with this opinion.

3. We also note that several of the *Hashmi* factors, if applicable in petitioner's case, counsel in favor of granting a continuance. For instance, petitioner already has an approved labor certification and I–130 petition. Hence, petitioner's visa petition is not only "prima facie approvable," it is approved. Hence, petitioner's application for adjustment of status is much less speculative than Elbahja's, who did not even have an approved labor certification. *See Elbahja,* 505 F.3d at 129. Visas will certainly become available in petitioner's visa category. The only question is when, not if.

