NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4698
_____

YIUYAN WANG & HONGJUN GAO,
Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency Nos. A98 703 935 & A99 927 347)
Immigration Judge:  Honorable Susan G. Roy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 16, 2011

Before:  McKEE, Chief Judge, SMITH and GARTH, Circuit Judges

(Opinion filed: March 21, 2011)
_____

OPINION
_____

PER CURIAM

Yiuyan Wang and her husband, Hongjun Gao, are citizens of China. After arriving in the United States, Wang was charged with removability pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i) [8 U.S.C. § 1182(a)(6)(A)(i)] (present without being admitted or paroled).[1] Gao was charged under INA § 237(a)(1)(B) [8 U.S.C. § 1227(a)(1)(B)] (overstaying authorized period of admission). The petitioners conceded the charges and applied for asylum, withholding of removal, and protection under the Convention Against Torture, claiming that they were persecuted under China's coercive population control policies. In particular, Wang alleged that, after giving birth to a son in 1987, she was forced to undergo two abortions (in 1988 and 2004) and have an IUD inserted. Gao testified that he confronted the family planning officials upon learning about Wang's second abortion.

The Immigration Judge ("IJ") denied relief, finding that Wang's asylum application was untimely, that neither petitioner was credible, and that Gao's account, even if credible, did not establish that he suffered past persecution. The Board of Immigration Appeals ("BIA") dismissed the petitioners' appeal, concluding that "the totality of the circumstances supports [the] adverse credibility determination." In particular, the Board agreed that Gao was not credible because of his "omission about his alleged 'other resistance' prior to the hearing, his non-responsive testimony in general, and his lack of corroboration." With respect to Wang, the BIA cited "discrepancies,

[1] Wang was initially ordered removed in absentia, but successfully moved to reopen the proceedings on the basis that she had not received notice of the hearing.

implausible testimony about why she waited to remove her IUD, and other aspects of her claim for which she could not provide adequate explanations." In light of its adverse credibility determination, the Board declined to address whether Wang's asylum application was timely. The BIA also held that the petitioners failed to provide sufficient objective evidence to establish that they will be tortured upon return to China.

The petitioners filed a timely petition for review. We have jurisdiction under INA § 242 [8 U.S.C. § 1252]. Because the BIA adopted the findings of the IJ and also commented on the sufficiency of the IJ's determinations, this Court reviews the decisions of both the BIA and the IJ. Kaita v. Att'y Gen., 522 F.3d 288, 296 (3d Cir. 2008). Our review of these decisions is for substantial evidence, considering whether they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Lin-Zheng v. Att'y Gen., 557 F.3d 147, 155 (3d Cir. 2009) (en banc) (internal citation omitted). We will uphold an adverse credibility determination under the substantial evidence standard "'unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Lin v. Att'y Gen., 543 F.3d 114, 119 (3d Cir. 2008) (internal citation omitted). Adverse credibility determinations based on speculation or conjecture, rather than on record evidence, are reversible. Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). Because the petitioners filed their asylum applications after May 11, 2005, the provisions of the REAL ID Act governing credibility determinations in asylum applications apply. See Chukwu v. Att'y Gen., 484 F.3d 185, 189 (3d Cir.2007). Under the REAL ID Act, an IJ may base a credibility determination on observations of the

3

applicant's demeanor, candor, or responsiveness, the inherent plausibility of the applicant's story, the consistency of the applicant's statements, and any inaccuracies or falsehoods in such statements. See INA § 208(b)(1)(B)(iii) [8 U.S.C. § 1158(b)(1)(B)(iii)]; see also Gabuniya v. Att'y Gen., 463 F.3d 316, 322 n.7 (3d Cir. 2006).

After careful review of the record, we conclude that the adverse credibility determination with respect to both Wang and Gao is supported by substantial evidence. The IJ concluded that Wang was not credible because of inconsistencies concerning the date when she entered the United States. In her asylum application and testimony, Wang stated that she entered the United States in June 2004. That entry date conflicts with a Petition for Alien Worker and an Application to Adjust Status, both of which bear Wang's signature and list her date of last arrival as March 26, 1999. In addition, the record includes a letter from the United States Department of Labor, dated August 27, 2001, granting an Application for Alien Employment Certification, apparently filed on Wang's behalf by a restaurant in Bowling Green, Ohio.

Wang explained that the documents which indicate that she arrived in the United States before 2004 were prepared by an unscrupulous immigration "servicing company" in New York. The IJ rejected Wang's account, noting that she failed to provide any reliable evidence that she lived in China from 1999 to 2004.[2] Although Wang claimed

_____

[2] The IJ also found that Wang provided "no explanation whatsoever as to why, first of all, [the company] would pick the wrong date of entry since it was irrelevant at

4

that she possessed a booklet indicating that she had submitted to regular IUD checkups while living in China, she did not submit it to the Immigration Court. In addition, the household registration document that she provided was issued in July 1999. A.R. 517. According to the IJ, her passport was also issued in 1999, "seem[ed] to indicate that she traveled out of China," and contained "no proof whatsoever that she ever returned to China." The only piece of evidence indicating that Wang lived in China from 1999 to 2004, an abortion certificate dated March 12, 2004, A.R. 527-28, was cast into doubt by the State Department's Profile of Asylum Claims and Country Conditions Report for China, which notes that the United States is unaware of abortion certificates being issued for involuntary abortions. Given the lack of evidence demonstrating that Wang lived in China until 2004, and, notwithstanding her allegations of fraud by the immigration service company, we are not compelled to conclude that she testified credibly about her date of arrival in the United States. Cf. Siewe v. Gonzales, 480 F.3d 160, 170 (2d Cir. 2007) (holding that once an IJ concludes that a document is false, the IJ is generally "free

that time to what she was applying for or even more importantly, why anyone would have filed a labor certification on her behalf prior to her arrival in the United States." In Wang's brief on appeal to the BIA, she surmised that the immigration company falsified and backdated the documents so she could qualify for adjustment under the Life Act. That Act "offered a route to legalization for certain aliens, physically present in the United States, who were the beneficiaries of an application for labor certification filed prior to April 30, 2001." Rajah v. Mukasey, 544 F.3d 449, 451 n.5 (2d Cir. 2008). Wang pointed out that the employment certification letter lists April 27, 2001, as the "date of acceptance for processing." The IJ ultimately concluded, however, that Wang's veracity was undermined by her failure to include in her asylum application a full account of her experiences with the immigration company. We cannot say that this determination was not based on substantial evidence.

to deem suspect other documents (and to disbelieve other testimony) that depend for probative weight upon [the applicant's] veracity").

The IJ and the Board also questioned why Wang waited approximately 28 months after her purported arrival in the United States to have the IUD removed. Wang explained that the IUD was not causing her any problems and that removal of the device was expensive. We agree that these explanations are implausible, especially given Wang's testimony that she wanted to have more children, her indication that while living in China she had to have an IUD removed because it caused medical complications, and her ability to pay $2000 to the immigration service company. Because these findings are reasonably grounded in the record, we conclude that substantial evidence supports the adverse credibility finding regarding Wang.

Furthermore, with respect to Gao, the petitioners have not shown that a reasonable adjudicator would be compelled to reverse the determination that he did not testify credibly regarding his response to Wang's second forced abortion. In his interview with the asylum office, Gao claimed that "he was very angry about this event but did not voice his opinion to the cadres." Similarly, in his asylum affidavit, Gao stated that "I was very angry when I heard that my wife underwent another abortion." Wang testified only that her husband was "[v]ery angry" when learned of the abortion. When he appeared before the IJ, however, Gao disclosed for the first time that, on the day after the forced abortion, he confronted the family planning official at the company where he and Wang worked. When asked to explain the earlier omission of this fact, Gao answered, "I think about it

6

now that this is quite important." In their Brief, the petitioners argue that Gao did not disclose the confrontation when he initially applied for asylum because, at the time, "the husband needed not prove his opposition or 'other resistance' to the coercive population control program if his wife was forced to have an abortion." Indeed, prior to the Attorney General's decision in Matter of J-S-, 24 I. & N. Dec. 520 (A.G. 2008), a husband could qualify for relief based on the well-founded fear that his wife may be persecuted under a coercive population control policy. A spouse could still establish eligibility for asylum in their own right by showing persecution for refusing to comply with such policy or "other resistance" thereto. See id. at 538; see also Lin-Zheng, 557 F.3d at 157. Notably, however, Gao did not supplement his asylum application with an account of the confrontation following the issuance of Matter of J-S-. In any event, and regardless of any change in the law, Gao's decision to confront a birth control official was a material event. Thus, his failure to mention it prior to the hearing sufficiently supports the adverse credibility determination. See Xie v. Ashcroft, 359 F.3d 239, 243 (3d Cir. 2004); see also Lin-Zheng, 557 F.3d at 157 (concluding that substantial evidence supported adverse credibility finding regarding husband's testimony about his own harassment by family planning authorities).

Based on the foregoing, we conclude that the adverse credibility finding was amply supported by the record. Accordingly, the petitioners have not met their burden of proof for asylum and withholding of removal. We agree with the Government that the

7

petitioners have waived any challenge to the denial for protection under the CAT.  <u>See</u>

<u>Chen v. Ashcroft</u>, 381 F.3d 221, 235 (3d Cir. 2004).