# Matter of L-A-B-R- et al., Respondents

*Decided on August 16, 2018*

U.S. Department of Justice
Office of the Attorney General

(1)  An immigration judge may grant a motion for a continuance of removal proceedings only "for good cause shown."  8 C.F.R. § 1003.29.

(2)  The good-cause standard is a substantive requirement that limits the discretion of immigration judges and prohibits them from granting continuances for any reason or no reason at all.

(3)  The good-cause standard requires consideration and balancing of multiple relevant factors when a respondent alien requests a continuance to pursue collateral relief from another authority—for example, a visa from the Department of Homeland Security.  *See Matter of Hashmi*, 24 I&N Dec. 785, 790 (BIA 2009).

(4)  When a respondent requests a continuance to pursue collateral relief, the immigration judge must consider primarily the likelihood that the collateral relief will be granted and will materially affect the outcome of the removal proceedings.

(5)  The immigration judge should also consider relevant secondary factors, which may include the respondent's diligence in seeking collateral relief, DHS's position on the motion for continuance, concerns of administrative efficiency, the length of the continuance requested, the number of hearings held and continuances granted previously, and the timing of the continuance motion.

## BEFORE THE ATTORNEY GENERAL

The Immigration and Nationality Act ("INA") authorizes immigration judges to conduct proceedings to determine the removability of aliens.  INA § 240(a)(1), 8 U.S.C. § 1229a(a)(1).  Immigration judges have the authority to "grant a motion for continuance for good cause shown."  8 C.F.R. § 1003.29.  Respondents often request continuances because they are pursuing collateral relief in other forums that may affect the outcome of their removal proceedings.  For example, an alien may move for a continuance because he is the subject of a family- or employment-based visa petition that, if approved by United States Citizenship and Immigration Services ("USCIS"), would enable him to apply for adjustment of status in the immigration court and become a lawful permanent resident.

Lacking any guidance in the INA's implementing regulations, the Board developed a multifactor balancing test to determine whether good cause exists to support a continuance in light of certain pending collateral

proceedings. *See Matter of Hashmi*, 24 I&N Dec. 785, 790 (BIA 2009). Although the Board's *Hashmi* framework clarified immigration judges' discretion to issue some continuances, it has not been extended to the consideration of continuances for all types of collateral proceedings. Meanwhile, the number of continuances granted by immigration judges has increased dramatically over the past decade, and the Board has declined to hear numerous interlocutory appeals recently filed by the Department of Homeland Security ("DHS") challenging orders granting continuances.

I took up these cases and invited briefing about the proper application of the good-cause standard to a motion for continuance to accommodate collateral proceedings. 27 I&N Dec. 245 (A.G. 2018). For the reasons set forth below, I hold that an immigration judge should assess whether good cause supports such a continuance by applying a multifactor analysis, which requires that the immigration judge's principal focus be on the likelihood that the collateral relief will be granted and will materially affect the outcome of the removal proceedings.

As I recently explained in *Matter of Castro-Tum*, continuances are a "legitimate[]" and "appropriate" case-management tool for immigration judges. 27 I&N Dec. 271, 293 (A.G. 2018). Yet the regulation authorizing continuances, 8 C.F.R. § 1003.29, limits their use by imposing a good-cause standard. The good-cause standard is not a mere formality that permits immigration judges to grant continuances for any reason or no reason at all. Rather, the good-cause requirement is an important check on immigration judges' authority that reflects the public interest in expeditious enforcement of the immigration laws, as well as the tendency of unjustified continuances to undermine the proper functioning of our immigration system.

## I.

### A.

The United States has a "strong interest in the orderly and expeditious management of immigration cases." *Alsamhouri v. Gonzales*, 484 F.3d 117, 123 (1st Cir. 2007); *accord Castro-Tum*, 27 I&N Dec. at 289–90. This interest in efficiency pervades the INA, reflecting Congress's intent to streamline the deportation process. *Stone v. INS*, 514 U.S. 386, 399–400 (1995); *see, e.g.*, INA § 241(a)(1)(A), 8 U.S.C. § 1231(a)(1)(A) (generally requiring execution of removal orders within ninety days). Efficiency is also a common theme in the immigration courts' procedural regulations, which promote the "timely" and "expeditious" resolution of removal proceedings. 8 C.F.R. §§ 1003.10(b), 1003.12. As I recently stated, "[o]nce DHS initiates

proceedings, immigration judges and the Board must proceed 'expeditious[ly]' to resolve the case." *Castro-Tum*, 27 I&N Dec. at 289.

There are times when the prudent use of continuances may advance the efficient enforcement of the immigration laws. Continuances can serve as an important management tool for adjudicators and "promote efficient case management." *United States v. Tanner*, 544 F.3d 793, 795 (7th Cir. 2008). When a key participant in a hearing falls ill, for instance, or an impending factual development will alter the course of the case, it can be wasteful and inefficient to plow ahead immediately. But continuances are also "readily susceptible to use as a delaying tactic." *Lee v. Kemna*, 534 U.S. 362, 366 (2002). Convening additional hearings imposes no small burden on the immigration court—a burden that, as in ordinary litigation, "counsels against continuances except for compelling reasons." *Morris v. Slappy*, 461 U.S. 1, 11 (1983). And the use of continuances as a dilatory tactic is particularly pernicious in the immigration context. As the Supreme Court has recognized, "[o]ne illegally present in the United States who wishes to remain . . . has a substantial incentive to prolong litigation in order to delay physical deportation for as long as possible." *INS v. Rios-Pineda*, 471 U.S. 444, 450 (1985).

The regulation governing continuances authorizes an immigration judge to grant a motion for continuance only "for good cause shown." 8 C.F.R. § 1003.29. [1] Although the regulations do not define "good cause," the standard plainly confines the discretion of immigration judges to grant continuances. Rather than giving "unfettered discretion to grant or deny a continuance," section 1003.29 "require[s] an [immigration judge] to make some inquiry into whether good cause exists in a given individual case." *Ahmed v. Holder*, 569 F.3d 1009, 1014 (9th Cir. 2009). "Good cause," in other words, does not mean "no cause" or "any cause." *See, e.g.*, *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964) (procedural rule's "good-cause requirement is not a mere formality, but is a plainly expressed limitation on the use of [the rule]"); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339–40 (2d Cir. 2000) (Sotomayor, J.) (contrasting a good-cause standard with a "more liberal" rule directing courts to grant relief "freely . . . when justice so requires").

---

[1]  As I noted in my order directing the Board to refer these cases to me, 8 C.F.R. § 1240.6 also authorizes immigration judges to pause proceedings. "After the commencement of the hearing, the immigration judge may grant a reasonable adjournment either at his or her own instance or, *for good cause shown*, upon application by the respondent or [DHS]." *Id.* (emphasis added). Sections 1003.29 and 1240.6 were both derived from 8 C.F.R. § 242.13 (1958). The Board and the parties agree that the same good-cause standard governs continuances under section 1003.29 and adjournments under section 1240.6. I operate on the same understanding and, for simplicity's sake, refer exclusively to section 1003.29 in this opinion.

B.

The Board's current framework for assessing a motion for continuance to allow time for collateral visa petition proceedings emerged about a decade ago. In 2008, the Third Circuit vacated a decision of the Board affirming an order denying a continuance that rested "solely on [the immigration judge's] case-completion goals." *Hashmi v. Att'y Gen.*, 531 F.3d 256, 261 (3d Cir. 2008). The respondent had requested a continuance because he was the subject of a pending family-based visa petition that, if approved by USCIS, would have opened the door to adjustment of status, but the immigration judge refused to delay the removal proceedings in light of "his obligation to complete cases 'within a reasonable period of time.'" *Id.* at 258–59.

On remand from the court of appeals, the Board held that an immigration judge should consider and balance various factors in assessing a motion for continuance to allow the respondent to pursue a family-based visa petition. The Board listed the following factors: "(1) the DHS response to the motion; (2) whether the underlying visa petition is prima facie approvable; (3) the respondent's statutory eligibility for adjustment of status; (4) whether the respondent's application for adjustment merits a favorable exercise of discretion; and (5) the reason for the continuance and other procedural factors." *Hashmi*, 24 I&N Dec. at 790. The Board explained that this list was "illustrative, not exhaustive," and that "the focus of the inquiry is the apparent ultimate likelihood of success on the adjustment application." *Id.* at 790. The Board remanded the case for the immigration judge to apply the multifactor balancing test. *Id.* at 794.

The Board has since extended the *Hashmi* framework to continuance requests related to other types of collateral proceedings. It applied *Hashmi* in the employment-based visa context in *Matter of Rajah*, 25 I&N Dec. 127 (BIA 2009). There, the Second Circuit had remanded the case for the Board "to identify the boundaries of the discretion that [immigration] judges may exercise" in deciding whether to grant a continuance in light of a labor certification pending before the Department of Labor.[2] *Rajah v. Mukasey*, 544 F.3d 449, 456 (2d Cir. 2008). On remand, the Board held that the framework adopted in *Hashmi* also applies to respondents seeking employment-based visas and related relief. *Rajah*, 25 I&N Dec. at 130, 135–36, 137–38. In *Matter of Sanchez Sosa*, 25 I&N Dec. 807 (BIA 2012), the Board extended *Hashmi* (with some tweaks for procedural reasons) to aliens who are petitioning USCIS for U visas, which are available to certain crime victims who may provide assistance to law enforcement.

---

[2] Approval of a labor certification by the Department of Labor is a prerequisite to petitioning USCIS for an employment-based visa, which can serve as a basis for adjustment of status. *See, e.g., Lendo v. Gonzales*, 493 F.3d 439, 441–42 (4th Cir. 2007).

The Board's development and extension of *Hashmi* has coincided with a significant rise in the total number of continuances granted by the immigration courts. In 2012, the Department of Justice's Office of the Inspector General concluded that "frequent and lengthy continuances" were a "primary factor" contributing to delays in the immigration courts. I-2013-001, *Management of Immigration Cases and Appeals by the Executive Office for Immigration Review* 29 (Oct. 2012). The Inspector General attributed a substantial share of these continuances to aliens who were seeking time to apply for relief from DHS or the immigration court. *See id.* at 30–31. In a 2017 report, the Government Accountability Office documented a 23-percent increase in continuances between 2006 and 2015, including an 18-percent increase in "respondent-related" continuances. GAO-17-438, *Immigration Courts—Actions Needed to Reduce Case Backlog and Address Longstanding Management and Operational Challenges* app. III, tbl. 12 (June 2017). Among the leading causes of the respondent-related continuances during this time period was the pendency of a petition or application presented to DHS. *See id.* tbl. 13.

## II.

## A.

In each of these three cases, the immigration judge granted a continuance over DHS's objection to give the respondent time to pursue collateral relief from another authority.

Respondent L-A-B-R- entered the United States without authorization in 2015, and DHS initiated removal proceedings. At an initial hearing in November 2015, L-A-B-R- conceded removability and stated his intention to apply for asylum and other relief from the immigration court. He appeared at two more hearings in March and May 2016, and the immigration judge granted continuances to give him time to find counsel and complete an asylum application. At a fourth hearing, in June 2016, L-A-B-R- submitted his application but also stated that he intended to marry a U.S. citizen, who would then submit a visa petition to USCIS on his behalf. In an August 2017 hearing, L-A-B-R- confirmed his marriage to a U.S. citizen and proffered an incomplete visa petition that his wife intended to file. L-A-B-R- indicated that he would leave the United States and seek admission through consular processing if USCIS approved the visa petition.[3]

---

[3] An alien, like L-A-B-R-, who was not "inspected and admitted or paroled into the United States" is generally not eligible to adjust status within the United States. INA § 245(a), 8 U.S.C. § 1255(a).

The immigration judge continued the August 2017 hearing, apparently to provide time for USCIS to adjudicate the prospective visa petition, and scheduled a new hearing for October 2018.  DHS objected to the continuance on the ground that L-A-B-R- "is not *prima facie* eligible for adjustment of status before the Immigration Judge or any other agency within the United States," but the immigration judge overruled the objection.  Brief for DHS at 6.  DHS appealed to the Board.

Respondent Somphet was paroled into the United States in 2005.  After marrying a U.S. citizen, she concurrently applied for a visa and adjustment of status with USCIS in 2010.  USCIS determined that Somphet's original parole documents were invalid, however, making her inadmissible under the INA.  *See* INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i) ("Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States . . . is inadmissible.").  Somphet sought a waiver of inadmissibility in 2013, but USCIS denied it, along with her application for adjustment of status, because she could not show the "extreme hardship" required for such a waiver.  INA § 212(i)(1), 8 U.S.C. § 1182(i)(1).

DHS then initiated removal proceedings.  The immigration judge granted two continuances related to Somphet's retention of counsel.  At a third hearing, in December 2015, Somphet filed new applications for waiver of inadmissibility and adjustment of status and the immigration judge scheduled a merits hearing for April 2017.  There, DHS argued that the immigration judge lacked jurisdiction over Somphet's adjustment application.  The immigration judge continued the proceedings twice more before concluding at a July 2017 hearing that she did indeed lack jurisdiction over the application.  Over DHS's objection, the immigration judge granted yet another continuance to March 2018 to allow Somphet to reapply for waiver of inadmissibility and adjustment of status with USCIS.  DHS appealed to the Board.

Respondent McCalla entered the country in 1990, overstayed his visa, and was placed in removal proceedings in 2005 after an arrest.  McCalla's case has been continued over thirty times—despite multiple objections by DHS—including for reasons related to his marriage to a U.S. citizen, additional arrests and criminal convictions, and efforts to collaterally attack those convictions.  Brief for DHS at 8–9.  In October 2017, the immigration judge again continued the proceedings to allow McCalla to pursue a pardon of a 2006 conviction from the governor of Pennsylvania, over DHS's objection that the pardon, even if granted, would not render McCalla prima facie eligible for an adjustment of status.  DHS appealed.

B.

In three nearly identical orders issued in late 2017 and early 2018, the Board denied DHS's requests for interlocutory review of the continuances granted in these cases. The Board noted that it occasionally entertains interlocutory appeals presenting "significant jurisdictional questions about the administration of the immigration laws, or to correct recurring problems in the handling of cases by Immigration Judges." But the Board concluded that none of these appeals fell within the "limited ambit of cases" meriting interlocutory review, and therefore directed that they be returned to the immigration courts without further action. The Board has recently denied review in more than a dozen similar appeals on the same basis. Brief for DHS at 9–10.

In March 2018, I directed the Board to refer these cases to me pursuant to 8 C.F.R. § 1003.1(h)(1)(i). I invited briefing from the parties and interested amici about the proper application of the good-cause standard in 8 C.F.R. § 1003.29 to a request for a continuance to accommodate a collateral matter. Each of the parties and eight amici submitted briefs, which have assisted me in my consideration of the issues presented.

III.

The overuse of continuances in the immigration courts is a significant and recurring problem. Unjustified continuances provide an illegitimate form of de facto relief from removal. "It is well established" that neither an immigration court nor the Board has "authority to create relief beyond what has been provided by the [INA] or the regulations." *Matter of G-K-*, 26 I&N Dec. 88, 93 (BIA 2013). Yet "a continuance, in effect, allows an alien to remain in the United States for a period of time without any defined legal immigration status." *Ukpabi v. Mukasey*, 525 F.3d 403, 407–08 (6th Cir. 2008). "Finding 'good cause' is crucial" because "[a]n unreasonable continuance would thwart the operation of statutes providing for removal of inadmissible and deportable aliens." *Id.* (citations omitted); *see, e.g.*, *Matter of Silva-Rodriguez*, 20 I&N Dec. 448, 450 (BIA 1992) (reversing an immigration judge's order granting a one-year continuance that "in essence . . . conditionally granted" the respondent a waiver of inadmissibility); *see also INS v. Doherty*, 502 U.S. 314, 323 (1992) ("as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States").

Far from being minor procedural matters, unnecessary continuances undermine the detailed statutory and regulatory scheme established under the INA. The frequency of continuances and the impact that these motions have

upon the administration of the immigration-court system call for additional guidance to protect against abuse. I conclude that under 8 C.F.R. § 1003.29, immigration courts should continue to apply a multifactor test to assess whether good cause exists for a continuance for a collateral proceeding, but that the decision should turn primarily on the likelihood that the collateral relief will be granted and will materially affect the outcome of the removal proceedings. Good cause also may not exist when the alien has not demonstrated reasonable diligence in pursuing the collateral adjudication, DHS justifiably opposes the motion, or the requested continuance is unreasonably long, among other possibilities.

## A.

"Good cause" has long been a common standard for granting a continuance. *See Rice v. Ames*, 180 U.S. 371, 376 (1901) (discussing an Illinois statute that authorized justices of the peace and examining magistrates to grant continuances "on consent of the parties or on any good cause shown"). Despite its history and frequent usage, however, the term "good cause" has no settled meaning in law. *Compare Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) ("extraordinary circumstances [are] a close correlate of good cause"), *with Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1377 (9th Cir. 1979) ("Good cause is . . . not a difficult standard to meet."). Definitions of the term tend to be "nebulous and elusive," *Summit Cty. Children Servs. Bd. v. Commc'n Workers of Am., Local 4546*, 865 N.E.2d 31, 35 (Ohio 2007), or tautological, *see Black's Law Dictionary* 266 (10th ed. 2014) (defining "good cause" as "[a] legally sufficient reason").

Tribunals confronting good-cause provisions thus have elaborated context-specific multifactor balancing tests, rather than attempting to craft bright-line, one-size-fits-all definitions. *E.g.*, *United States v. McCoy*, 313 F.3d 561, 565–66 (D.C. Cir. 2002) (en banc); *Conetta v. Nat'l Hair Care Ctrs., Inc.*, 236 F.3d 67, 75 (1st Cir. 2001). Indeed, the Board has taken the same approach with the good-cause standard in another regulation governing the immigration courts, 8 C.F.R. § 1003.20(b), which authorizes changes of venue "for good cause." *See Matter of Rahman*, 20 I&N Dec. 480, 482–83 (BIA 1992) ("Good cause is determined by balancing the factors we have found relevant to the venue issue.").

Congress indicated in the INA that a good-cause standard invites consideration of multiple relevant factors. Under section 243(a)(3), a district court "may for good cause suspend the sentence of an alien" for failing to comply with a removal order and "order the alien's release." 8 U.S.C. § 1253(a)(3). The statute directs the court to consider, "[i]n determining

whether good cause has been shown," a list of factors including "the age, health, and period of detention of the alien," "the effect of the alien's release upon the national security and public peace or safety," and "the eligibility of the alien for discretionary relief under the immigration laws." *Id.*

Immigration judges and the Board should take a similar approach when a provision uses the term "good cause" but does not define it. The good-cause standard in section 1003.29 requires consideration and balancing of all relevant factors in assessing a motion for continuance to accommodate a collateral matter. *See Hashmi*, 24 I&N Dec. at 790, 794; *Rajah*, 25 I&N Dec. at 135–36; *Sanchez Sosa*, 25 I&N Dec. at 812–13. This standard comports with both the INA and the prevailing treatment of good-cause standards, and has received the approval of several federal courts of appeals. *See, e.g.*, *Cadavedo v. Lynch*, 835 F.3d 779, 784 (7th Cir. 2016) (describing *Hashmi* as "the correct legal standard for the Board to apply"); *Malilia v. Holder*, 632 F.3d 598, 606 (9th Cir. 2011) (*Hashmi* factors are "commonsense standards").

## B.

The factors relevant to the good-cause assessment under 8 C.F.R. § 1003.29 are not all of equal importance. An immigration judge considering a motion for continuance to await the resolution of a collateral matter must focus principally on two factors: (1) the likelihood that the alien will receive the collateral relief, and (2) whether the relief will materially affect the outcome of the removal proceedings. The immigration judge should also consider whether the alien has exercised reasonable diligence in pursuing that relief, DHS's position on the motion, the length of the requested continuance, and the procedural history of the case. In assessing these factors, the immigration judge should also remain mindful that as the party seeking the continuance, the alien bears the burden of establishing good cause.

### 1.

Section 1003.29 focuses on the sufficiency of the "cause" or reason proffered for the continuance. When a respondent requests a continuance to accommodate a collateral proceeding, the good-cause inquiry thus must focus on whether the collateral matter will make a difference in the removal proceedings—that is, "whether a continuance is likely to do any good." *United States v. Swanson*, 572 F.2d 523, 526 (5th Cir. 1978). This will turn out to be true only if the respondent receives the collateral relief and that relief materially affects the outcome of respondent's removal proceedings.

The likelihood of these two contingencies must therefore be the primary consideration.

This principle is consistent with the Board's precedent. In *Hashmi* and *Rajah*, the respondents sought continuances to pursue visa petitions (the collateral matter at issue) that, if approved by USCIS, would have enabled them to apply for adjustment of status in the immigration court and thereby potentially avoid removal. *Hashmi*, 24 I&N Dec. at 786; *Rajah*, 25 I&N Dec. at 128, 138. Three of the five main good-cause factors enumerated in *Hashmi* and *Rajah* pertained to the likelihood of these efforts' success: "whether the underlying visa petition is prima facie approvable"; "the respondent's statutory eligibility for adjustment of status"; and "whether the respondent's application for adjustment merits a favorable exercise of discretion." *Hashmi*, 24 I&N Dec. at 790; *Rajah*, 25 I&N Dec. at 130. Recognizing the importance of these factors, *Hashmi* held that "the focus of the inquiry is the apparent ultimate likelihood of success on the adjustment application." 24 I&N Dec. at 790; *accord Rajah*, 25 I&N Dec. at 130, 136.

The Board, in reviewing orders on motions for continuance, has also long held that continuances should not be granted when a respondent's collateral pursuits are merely speculative. In *Matter of M-*, 5 I&N Dec. 622, 624 (BIA 1954), the Board affirmed the denial of a continuance requested by the alien to provide time for adjudication of a collateral application for adjustment of status. The Board explained that "[t]o hold that an alien by filing such an application, no matter how frivolous or unfounded his claim to relief may be, may automatically stay a deportation proceeding already pending would be to read into the law a provision which does not exist." *Id.*; *see also Matter of Kotte*, 16 I&N Dec. 449, 452 (BIA 1978) (affirming the denial of a continuance to an alien who was "statutorily ineligible for adjustment of status"). The Board has applied similar reasoning to other kinds of continuances as well. In *Matter of Sibrun*, 18 I&N Dec. 354, 356 (BIA 1983), the Board held that an alien seeking a continuance in order to "obtain and present additional evidence" must show that the evidence sought "is probative, noncumulative, and significantly favorable." The Board further held that the denial of such a continuance "will not be reversed unless the alien establishes that that denial . . . materially affected the outcome of his case." *Id.* at 356–57; *see also Matter of P-*, 4 I&N Dec. 684, 687 (BIA 1952) (affirming the denial of a continuance sought to secure additional evidence because "we fail to perceive how such evidence could possibly assist the respondent in establishing that he is not amenable to deportation").

This line of precedent forecloses the argument that any filing of a collateral petition that could conceivably provide relief from removal supplies good cause for a continuance. Reply Brief for Somphet at 14. That argument is also inconsistent with a large body of case law in the federal

courts affirming denials of continuances in light of the speculative nature of the collateral relief sought. *E.g.*, *Cadavedo*, 835 F.3d at 783 (alien's chance of success in his collateral proceeding was "at best speculative"); *Oluyemi v. INS*, 902 F.2d 1032, 1034 (1st Cir. 1990) (Breyer, C.J.) (immigration judge did not abuse his discretion "in refusing to delay the hearing because he believed that the adjustment petition eventually would be denied"); *see also Rajah*, 25 I&N Dec. at 136–37 (collecting cases). The probability that a respondent's collateral proceeding will succeed and materially affect the outcome of the respondent's removal proceedings should therefore be the most important consideration in the good-cause analysis.

2.

While the likelihood that the alien will receive the pursued collateral relief and that such relief will materially affect the outcome of the removal proceedings is the primary consideration in this context, immigration judges must also consider any other relevant factors. It is impossible to identify every factor that might bear on whether section 1003.29's good-cause standard is satisfied. But germane secondary factors may include, as detailed below, the respondent's diligence in seeking collateral relief, DHS's position on the motion for continuance, and concerns of administrative efficiency. *See Hashmi*, 24 I&N Dec. at 790, 793. It may also be appropriate to consider the length of the continuance requested, the number of hearings held and continuances granted previously, and the timing of the continuance motion.

*Respondent's Diligence.* A respondent bears the burden of establishing good cause for a continuance. *See, e.g.*, *Ramchandani v. Gonzales*, 434 F.3d 337, 338 (5th Cir. 2005). The grant of a continuance requires the immigration judge to notice another hearing date, and that, in turn, adds yet another hearing to an already overtaxed system. Because a delay in an immigration proceeding imposes a burden on the immigration judge, DHS, and other aliens pursuing prompt hearings, the respondent seeking to avoid a disposition must demonstrate that he has a well-founded justification for such relief. The immigration judge should not grant a continuance where the respondent appears to be seeking interim relief as a way of delaying the ultimate disposition of the case. To that end, it is reasonable to require the respondent to have "exercise[d] due diligence" in pursuing collateral relief in advance of the noticed hearing date. *Mazariegos-Paiz v. Holder*, 734 F.3d 57, 66 (1st Cir. 2013); *see also, e.g.*, *Sibrun*, 18 I&N Dec. at 356 (continuance motion "based upon an asserted lack of preparation and a request for opportunity to obtain and present additional evidence" must be supported by a "showing that the lack of preparation occurred despite a diligent good faith effort to be ready to proceed"). The immigration judge should not grant a

continuance merely because the respondent expresses the intention to file for collateral relief at some future date or where the respondent appears to have unreasonably delayed filing for collateral relief until shortly before the noticed hearing.

*Position of DHS.* The view of the opposing party is often relevant to the disposition of a motion for procedural relief, and DHS's views on a motion for continuance will often assist the immigration judge's good-cause analysis. *Hashmi*, 24 I&N Dec. at 791. But immigration judges need not treat as controlling DHS's consent to, opposition to, or failure to take a position on a motion for continuance. Section 1003.29 imposes a good-cause requirement that must be satisfied for each and every continuance requested, *see Ahmed*, 569 F.3d at 1014, and the regulation does not include an exception for unopposed motions or those filed on consent. Conversely, immigration judges must also avoid improperly shifting the burden to DHS to demonstrate the absence of good cause.

*Administrative Efficiency.* An immigration judge should also consider administrative efficiency in deciding whether to grant a continuance, since at bottom, continuances are themselves intended to promote efficient case management. *Tanner*, 544 F.3d at 795. The most recent guidance to immigration judges from the Executive Office for Immigration Review on the use of continuances appropriately recognizes efficiency as a relevant factor in the good-cause analysis. Memorandum for All Immigration Judges, from MaryBeth Keller, Chief Immigration Judge, *Re: Operating Policies and Procedures Memorandum 17-01: Continuances* at 3 (July 31, 2017), *supplementing and amending* Memorandum for All Immigration Judges, from Brian M. O'Leary, Chief Immigration Judge, *Re: Operating Policies and Procedures Memorandum 13-01: Continuances and Administrative Closure* at 2 (Mar. 7, 2013).

In *Hashmi*, the Board sent conflicting signals on this point. The Board accepted that "a history of continuances being granted by the Immigration Judge" in the case (including their "number and length") is an appropriate consideration. 24 I&N Dec. at 794. But the Board also stated that "[c]ompliance with an Immigration Judge's case completion goals . . . is not a proper factor in deciding a continuance request, and Immigration Judges should not cite such goals in decisions relating to continuances." *Id.* at 793–94; *accord Rajah*, 25 I&N Dec. at 136. The Board cited the Third Circuit's opinion in *Hashmi* for the latter proposition, but the Board overread that decision. The Third Circuit correctly held that it is "impermissibly arbitrary" "[t]o reach a decision about whether to grant or deny a motion for a continuance based *solely* on case-completion goals, with no regard for the circumstances of the case itself." 531 F.3d at 261 (emphasis added); *see also Perez Muniz v. Att'y Gen.*, 363 F. App'x 973, 981 n.6 (3d Cir. 2010)

(explaining the court's prior decision in *Hashmi*). But the Third Circuit did not hold that the immigration judge may not consider the number of continuances previously requested or the continuance's impact on the efficient determination of the case, among other case-specific factors. Statements by the Board to the contrary in *Hashmi* and *Rajah* are incorrect.

C.

As with any balancing analysis requiring consideration of multiple factors, a respondent's strength on certain factors may compensate for a weaker showing on others. *Cf. Illinois v. Gates*, 462 U.S. 213, 233 (1983) ("a deficiency in one" factor relevant to probable cause "may be compensated for . . . by a strong showing" on another); *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) ("If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in other areas are rather weak."). A respondent who makes a compelling case that he will receive collateral relief and successfully adjust status may receive a continuance even if, for instance, he has already received previous continuances. *See, e.g.*, *Merchant v. U.S. Att'y Gen.*, 461 F.3d 1375, 1378 (11th Cir. 2006) (vacating the denial of a continuance to an alien who had "successfully completed all actions required by [the INA] to be performed by him" to adjust status with an employment-based visa).

But because the respondent's likelihood of success in the collateral matter is paramount, a truly weak showing on that front may be dispositive. In some cases, it will be impossible or too uncertain that the respondent will succeed in the collateral proceeding itself. For example, an alien in removal proceedings seeking a continuance to apply for a provisional unlawful presence waiver from USCIS is ineligible for such a waiver while the proceedings are pending; thus, there would not be good cause for such a continuance. *See* 8 C.F.R. § 212.7(e)(4)(iii). Courts have also recognized that an alien's pending collateral attack on a criminal conviction is too "tentative" and "speculative" to support a continuance of removal proceedings. *Palma-Martinez v. Lynch*, 785 F.3d 1147, 1150 (7th Cir. 2015); *see also Jimenez-Guzman v. Holder*, 642 F.3d 1294, 1297 (10th Cir. 2011) (denial of a motion for continuance was "eminently rational" because "[p]ending post-conviction motions or other collateral attacks do not negate the finality of a conviction for immigration purposes unless and until the conviction is overturned"). An immigration judge should also deny a continuance when the respondent's collateral submission has already been denied and there are no relevant changed circumstances. *See, e.g.*, *Garcia v. Lynch*, 798 F.3d 876, 881 (9th Cir. 2015) (respondent "claimed that he would have used the additional time to seek postconviction relief, but he had

previously sought such relief to no avail"); *Morgan v. Gonzales*, 445 F.3d 549, 552 (2d Cir. 2006) ("Despite [petitioner's] argument to the contrary, he had no right to the adjudication of a second I-130 petition stemming from a marriage that had already been determined to lack *bona fides*.").

Even if the respondent's collateral proceeding has clear promise, it will sometimes be impossible or too uncertain that the collateral relief will affect the disposition of the removal proceedings. For example, the immigration judge must deny a continuance if he concludes that, even if USCIS approved the respondent's visa petition, he would deny adjustment of status as a discretionary matter or because the respondent is statutorily ineligible for adjustment. *See, e.g.*, *Malik v. Mukasey*, 546 F.3d 890, 892–93 (7th Cir. 2008) ("An alien is only entitled to adjust his status if he meets all the statutory eligibility requirements and he merits a favorable exercise of discretion."). Similarly, because adjustment of status typically requires an immediately available visa, INA § 245(a), 8 U.S.C. § 1255(a), good cause does not exist if the alien's visa priority date is too remote to raise the prospect of adjustment of status above the speculative level. *See, e.g.*, *Matter of Quintero*, 18 I&N Dec. 348, 350 (BIA 1982) ("the fact that the respondent has an approved visa petition does not entitle him to delay the completion of deportation proceedings pending availability of a visa number").

To assess the speculativeness of a respondent's collateral matter, an immigration judge will generally need an evidentiary submission by the respondent, which should include copies of relevant submissions in the collateral proceeding, supporting affidavits, and the like. This is consistent with Board precedents, which have repeatedly acknowledged the importance of such documentary evidence. *See Hashmi*, 24 I&N Dec. at 791–92; *Rajah*, 25 I&N Dec. at 136; *Sanchez Sosa*, 25 I&N Dec. at 813–14. Absent such evidence, the respondent generally will not carry his burden of showing that a collateral matter is actually likely to bear on the outcome of the removal proceedings. *See Giri v. Lynch*, 793 F.3d 797, 801 (7th Cir. 2015) (respondent failed to present evidence supporting a good-cause finding); *Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1048 (6th Cir. 2007) (same). If the respondent is going to establish good cause for a continuance, and impose upon the system the resulting burdens of such a delay, it is hardly too much to ask to have him substantiate that good cause would require such a result.

The immigration judge should also state his reasons for granting a continuance on the record or in a written decision. A record of the immigration judge's evaluation and balancing of the relevant good-cause factors does not bind the Board, of course, but it does aid the Board's review of a continuance order. *See Matter of Garcia-Reyes*, 19 I&N Dec. 830, 832 (BIA 1988). The absence of any reasoned explanation for the grant of a continuance may, were the Board to entertain an interlocutory appeal, leave

the Board no choice but to vacate the order granting the continuance if evidence supporting good cause is not clear from the record.

## IV.

Although the determination of good cause remains within the immigration judge's discretion, when a respondent seeks a continuance to pursue collateral relief, section 1003.29 requires scrutiny of whether the respondent's collateral proceeding is likely to make a difference. I therefore conclude that an immigration judge must assess whether good cause supports a continuance to accommodate a collateral proceeding by considering primarily the likelihood that the collateral relief will be granted and will materially affect the outcome of the removal proceedings, and any other relevant secondary factors. *See Hashmi*, 24 I&N Dec. at 790.

I hereby vacate the Board's orders declining to entertain these appeals and remand these cases to the Board for further proceedings consistent with this opinion.