# United States Court of Appeals for the Fifth Circuit

———————

No. 22-60606

———————

United States Court of Appeals
Fifth Circuit

**FILED**

February 12, 2025

Lyle W. Cayce
Clerk

Peter Mosoko Ikome,

*Petitioner*,

*versus*

Pamela Bondi, *U.S. Attorney General*,

*Respondent*.

_____

Appeal from the Board of Immigration Appeals
Agency No. A029 893 640

_____

Before Richman, Graves, and Wilson, *Circuit Judges*.[*]

Cory T. Wilson, *Circuit Judge*:

Peter Mosoko Ikome seeks review of (1) the Board of Immigration Appeals' affirmance of an immigration judge's denial of his motion to continue his removal proceedings, and (2) the Board's denial of his motion to remand. We do not have jurisdiction to review the Board's continuance determination, and the Board did not abuse its discretion in denying Ikome's motion to remand. We therefore dismiss Ikome's petition in part and deny it in part.

_____

[*] Judge Graves concurs in the judgment only.

No. 22-60606

## I.

Ikome, a native and citizen of Cameroon, entered the United States in 1989 as a nonimmigrant visitor with authorization to remain in the country for six months, but he overstayed his visa. Over the ensuing 35 years, Ikome and U.S. immigration authorities have engaged in on-again, off-again proceedings over his immigration status and removability. The following background only traces the wayposts along this extended journey that are pertinent to today's case.

Ikome married a United States citizen in 1992. In 1993, his wife filed an I-130 petition to start the process for an eventual adjustment of Ikome's status to that of lawful permanent resident. In 1998, Ikome and his wife divorced. According to Ikome, immigration authorities had not adjudicated his wife's I-130 petition by the time of their divorce.

Meanwhile, in 1991, Ikome was arrested for rape, and he pled guilty in 1993 to attempted rape and attempted sexual assault. In 1994, an immigration judge (IJ) issued a removal order against Ikome, but Ikome did not leave the country. In 2002, for reasons unclear from the record, Ikome's guilty-plea convictions were overturned; the prosecutor subsequently dropped the charges against him. Ikome's deportation proceedings were in turn terminated in 2006.

Ikome was again charged with removability in 2009. In May 2011, he conceded removability but indicated that he would be applying for cancellation of removal. The next month, Ikome married Melissa Senior, a United States citizen. Shortly thereafter, as had his previous wife in 1993, Senior filed an I-130 petition on Ikome's behalf. In October 2012, the IJ granted Ikome a continuance to allow for consideration of that petition. Ikome thereafter obtained additional continuances.

2

No. 22-60606

In February 2014, U.S. Citizenship and Immigration Services (USCIS) approved Senior's I-130 petition. The next month, the IJ again continued Ikome's hearing to allow him to apply for adjustment of status based on Senior's approved petition and for cancellation of removal. Ikome's removal hearing was ultimately reset to occur in June 2019. In March 2019, Diane Ikome—one of Ikome's daughters and a United States citizen—filed an I-130 petition on her father's behalf, though she had become eligible to do so ten months earlier, once she turned 21 years old. *See* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A)(i). Eight days before his June 2019 hearing, Ikome moved for a continuance to allow USCIS to adjudicate Diane's I-130 petition. The IJ denied Ikome's motion for failure to show good cause.

At the hearing, Ikome asked the IJ to reconsider the denial of his continuance motion. Ikome's counsel explained that, upon learning that Ikome was having marital problems that might result in Senior's absence from the hearing, counsel recommended that Diane file an I-130 petition on Ikome's behalf, and they "quickly put together the packet." According to counsel, Ikome filed the motion to continue when it became clear that Senior would indeed be absent from the hearing. The Government opposed Ikome's latest continuance request. Noting the numerous continuances already granted, the IJ asked Ikome's counsel why he had filed the motion at issue in an "untimely" manner. Counsel answered that he and Ikome "sometimes . . . have difficulty communicating" because Ikome "works out of town." Faulting Ikome for not making himself more available to his attorney, and observing that Ikome's proceedings had been pending for ten years, the IJ again ruled that there was not good cause for a continuance.

Given Senior's absence and his marriage's deterioration, Ikome withdrew his application for adjustment of status based on her I-130 petition. The hearing then proceeded on Ikome's application for cancellation of

3

removal. Finding that Ikome had not met his burden to show that his children would suffer "exceptional and extremely unusual hardship" were he to be removed from the country, 8 U.S.C. § 1229b(b)(1)(D), the IJ denied Ikome's application for cancellation of removal and ordered him to depart the United States.

Ikome timely appealed to the Board of Immigration Appeals (BIA). While his appeal was pending, USCIS approved Diane's I-130 petition, and Ikome filed an application for adjustment of status based on her petition. Ikome then moved the BIA to remand his case to the IJ, rather than hear his pending appeal, so that he could pursue adjustment of status based on Diane's petition. Instead, the BIA affirmed the IJ's denial of Ikome's application for cancellation of removal and dismissed Ikome's appeal. The BIA denied Ikome's motion to remand because Ikome had "forfeited his opportunity to apply for adjustment of status" by failing to "exhibit[] due diligence in pursuing adjustment of status through his daughter." The BIA also "note[d] that the [IJ]'s denial of [Ikome's] request for a continuance of the [June 2019] merits hearing was appropriate for essentially the same reason as [the BIA] denied the motion to remand: a lack of due diligence."

## II.

Ikome now seeks review of the BIA's (A) affirmance of the IJ's denial of Ikome's motion for a continuance based on his daughter's then-pending I-130 petition and (B) denial of Ikome's motion to remand so that he could pursue adjustment of status after the petition was approved. We address those issues in turn.

## A.

Ikome argues, and the Government agrees, that in denying relief as to his June 2019 motion for a continuance, the IJ and the BIA erred in failing to explain how they weighed the principal factors articulated by *In re*

*L-A-B-R-*, 27 I. & N. Dec. 405 (AG 2018).  In *L-A-B-R-*, the Attorney General held that an IJ "considering a motion for continuance to await the resolution of a collateral matter must focus principally on two factors: (1) the likelihood that the alien will receive the collateral relief, and (2) whether the relief will materially affect the outcome of the removal proceedings."  *Id.* at 413.  The IJ should also take into account "relevant secondary factors, which may include the respondent's diligence in seeking collateral relief, [the Department of Homeland Security]'s position on the motion . . . , concerns of administrative efficiency, the length of the continuance requested, the number of hearings held and continuances granted previously, and the timing of the continuance motion."  *Id.* at 405.

But before considering the merits of this question, we must consider our jurisdiction to entertain it.  *See Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 468 (5th Cir. 2020) (en banc) ("This court has a continuing obligation to assure itself of its own jurisdiction, sua sponte if necessary."  (citation omitted)).  We conclude that we lack jurisdiction to review the BIA's affirmance of the IJ's denial of Ikome's continuance motion.

**1.**

Under 8 U.S.C. § 1252(a)(2)(B)(i), "Congress has sharply circumscribed judicial review of the . . . process" whereby noncitizens may obtain discretionary relief from removal.  *Patel v. Garland*, 596 U.S. 328, 332 (2022).  That statute strips courts of jurisdiction to review "any judgment[s] regarding the granting of relief" under, *inter alia*, 8 U.S.C. § 1229b, which governs cancellation of removal and adjustment of status.  § 1252(a)(2)(B)(i).  However, 8 U.S.C. § 1252(a)(2)(D) restores our jurisdiction to review "constitutional claims [and] questions of law raised upon a petition for review."

No. 22-60606

In *Patel*, the Supreme Court explained that "[f]ederal courts lack jurisdiction to review facts found as part of discretionary-relief proceedings under § 1255 and the other provisions enumerated in § 1252(a)(2)(B)(i)." 596 U.S. at 347. Further refining the interplay between §§ 1252(a)(2)(B)(i) and 1252(a)(2)(D), the Court in *Wilkinson v. Garland* held that "[t]he statutory criterion of 'exceptional and extremely unusual hardship' is a legal standard" the application of which "to a given set of facts is reviewable as a question of law under § 1252(a)(2)(D)." 601 U.S. 209, 217 (2024). The question for us now is whether continuance determinations in proceedings for discretionary relief rest on the application of a legal standard and are therefore reviewable.

As this court recently observed, "[w]e have not addressed our jurisdiction to review continuance determinations after *Patel* and *Wilkinson*." *Cuenca-Arroyo v. Garland*, 123 F.4th 781, 786 (5th Cir. 2024) (per curiam). Faced with the question, the *Cuenca-Arroyo* panel decided that it "need[ed] not determine . . . whether § 1252(a)(2)(B)(i) forecloses our jurisdiction over such decisions (or whether § 1252(a)(2)(D) restores it) because [the panel] would not grant the relief Cuenca-Arroyo [sought] even if [it] were able[.]" *Id.* The panel explained that the challenged continuance determination before it was not the product of an abuse of discretion because the BIA, "at the very least, utilized a 'perceptibly rational approach' in weighing the [*L-A-B-R-*] factors." *Id.* (alteration accepted) (quoting *Manzano-Garcia v. Gonzales*, 413 F.3d 462, 469 (5th Cir. 2005)).

In her concurring opinion in *Cuenca-Arroyo*, CHIEF JUDGE ELROD expressed "agree[ment] with the panel opinion's decision to exercise jurisdiction" based on what she characterized as "an abundance of deference" to "a long line of cases in which we have reviewed the BIA's continuance determinations for an abuse of discretion." *Id.* at 786, 786 n.1 (Elrod, C.J., concurring). But, as she observed, "our caselaw is not so clear,"

6

*id.* at 786 n.1, particularly accounting for *Patel* and *Wilkinson*'s explication of the reach of § 1252(a)(2)(D). Indeed, "[o]ur published cases indicating that we do have jurisdiction to review continuance determinations can all be sorted into two buckets: cases that did not trigger § 1252(a)(2)(B)(i)'s jurisdictional bar and cases that did not evaluate whether we had jurisdiction." *Id.* (collecting cases). Regarding that second bucket, into which *Cuenca-Arroyo* itself falls, "the mere exercise of jurisdiction does not mean that it was proper in the first place." *Id.* (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998) ("We have often said that drive-by jurisdictional rulings . . . have no precedential effect.")). Given that both parties before us persuasively argue that Ikome's claim has merit, we cannot elide the jurisdictional question by denying relief in any event. And we do not read the per curiam opinion in *Cuenca-Arroyo* to inform our analysis of jurisdiction, as it expressly did not engage the issue. *See id.* at 786. We turn now to that analysis.

**2.**

The Supreme Court's recent holdings in *Patel* and *Wilkinson* have somewhat mapped the contours of our jurisdiction in the immigration context: *Patel* focused on § 1252(a)(2)(B)(i)'s stripping of jurisdiction, 596 U.S. at 347, while *Wilkinson* addressed § 1252(a)(2)(D)'s restoring of it, 601 U.S. at 217. In *Patel*, the Supreme Court reasoned that § 1252(a)(2)(B)(i)'s jurisdictional "prohibition encompasses any and all decisions relating to the granting or denying of [the covered] relief," "not just discretionary judgments or the last-in-time judgment." 596 U.S. at 337–38 (citation and internal quotation marks omitted). Plainly, "a decision to continue a [cancellation of removal] proceeding 'relat[es]' to that proceeding." *Cuenca-Arroyo*, 123 F.4th at 787 (Elrod, C.J., concurring) (second alteration in original) (quoting *Patel*, 596 U.S. at 339). Section 1252(a)(2)(D) restores our jurisdiction to review "constitutional claims" and "questions of law";

per *Wilkinson*, "[m]ixed questions of law and fact, even when they are primarily factual, fall within the statutory definition of 'questions of law' in § 1252(a)(2)(D) and are therefore reviewable." 601 U.S. at 225. But "a mixed question still involves 'the application of a legal standard to undisputed or established facts.'" *Cuenca-Arroyo*, 123 F.4th at 787 (Elrod, C.J., concurring) (quoting *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 227–28 (2020)). In short, we have "jurisdiction to review immigration decisions only when there is a legal standard to apply." *Id.* at 788.

Under 8 C.F.R. § 1003.29, an IJ "may grant a motion for continuance for good cause shown." To be sure, that good-cause standard—like the "exceptional and extremely unusual hardship" standard considered in *Wilkinson*—"requires an IJ to evaluate a number of factors." 601 U.S. at 222 (citing *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 65 (BIA 2001)). But unlike the hardship standard, the application of which discretely precedes an unreviewable discretionary decision whether to grant relief, *id.* at 218, 225 n.4, the standard governing continuance requests has discretion baked into it. *Compare Monreal-Aguinaga*, 23 I. & N. Dec. at 63–64, *with L-A-B-R-*, I. & N. Dec. at 413–14, 418. "When a respondent requests a continuance to accommodate a collateral proceeding, the good-cause inquiry . . . must focus on whether the collateral matter will make a difference in the removal proceedings—that is, 'whether a continuance is likely to do any good.'" *L-A-B-R-*, I. & N. Dec. at 413 (quoting *United States v. Swanson*, 572 F.2d 523, 526 (5th Cir. 1978)). In the context of a continuance to pursue a visa petition, for example, collateral relief will make a difference in removal proceedings only if the IJ determines that the respondent's associated application for adjustment of status would "merit[] a favorable exercise of discretion." *Id.* at 414 (quoting *In re Hashmi*, 24 I. & N. Dec. 785, 790 (BIA 2009)); *see also id.* at 418 (noting that an IJ "must deny a continuance if he concludes that, even if USCIS approved the respondent's visa petition, he

would deny adjustment of status as a discretionary matter"). Thus, "the determination of good cause remains within the [IJ]'s discretion," *id.* at 419, such that it does not involve a reviewable application of a legal standard.

Because we lack jurisdiction to review the BIA's continuance determination, we dismiss Ikome's petition for review as to the denial of his motion to continue his June 2019 hearing.

**B.**

There is also a question as to whether we have jurisdiction to review the BIA's decision not to remand to the IJ to consider Ikome's daughter Diane's approved I-130 petition as new evidence supporting Ikome's claim for adjustment of status. *See Perez v. Garland*, 67 F.4th 254, 257 (5th Cir. 2023) (holding, pre-*Wilkinson*, that because "[o]ur circuit has understood *Patel* to categorically foreclose review of hardship determinations," we "lack jurisdiction to review the BIA's decision not to remand to [an] IJ to consider new evidence" pertaining to the hardship determination). Here, however, we need not delve deeper into the jurisdictional question because Ikome's argument fails on the merits regardless.

Historically, "[w]e review the denial of a motion to remand 'under a highly deferential abuse-of-discretion standard.'" *Milat v. Holder*, 755 F.3d 354, 365 (5th Cir. 2014) (quoting *Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005)). "A motion to remand for new evidence shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing[.]" *Id.* (alteration accepted) (quoting 8 C.F.R. § 1003.2(c)(1)). "The Board's decision will not be disturbed unless it is 'capricious, racially invidious, utterly without foundation in the evidence, or otherwise so irrational that it is arbitrary rather than the result of any

perceptibl[y] rational approach.'" *Suate-Orellana v. Barr*, 979 F.3d 1056, 1062 (5th Cir. 2020) (quoting *Milat*, 755 F.3d at 365).

The BIA construed Ikome's motion as a motion to remand for consideration of "new, *previously unavailable* evidence." The Board then denied the motion, concluding that Diane's failure to file her petition until nearly a year after she became eligible to do so reflected a failure on Ikome's part to "exhibit[] due diligence in pursuing adjustment of status through his daughter"—essentially, that he failed to show the evidence "was not available and could not have been . . . presented" at the June 2019 hearing, 8 C.F.R. § 1003.2(c)(1). Ikome argues that he exercised sufficient diligence because he could not control the timing of Diane's filing and because, promptly after learning of Ikome's marital difficulties, his counsel recommended that Diane file an I-130 petition. But those arguments cut against each other, as Diane filed a petition soon after Ikome's counsel suggested she do so. Furthermore, Ikome's counsel told the IJ that he helped Diane "quickly put together" her I-130 petition. Under the facts of this case, and even assuming the ruling presents a "mixed question of law and fact" that we could review per *Wilkinson*, 601 U.S. at 212, it was at least "perceptibl[y] rational" for the BIA to have determined that Ikome should have acted to have his daughter file her petition as soon as she was eligible to do so, *Milat*, 755 F.3d at 365. After all, Ikome had been staving off deportation for over three decades, and he was well-familiar with the I-130 petition process by the time his daughter turned 21. We therefore deny his petition for review as to the BIA's denial of his motion to remand.

## III.

For the foregoing reasons, Ikome's petition for review is DISMISSED in part and DENIED in part.